**STEPHENSON and POTTER, Appellant, v. GLANDER, Tax Commr., Appellee.**

Board of Tax Appeals

No. 9876. Decided May 21, 1946.

Dinsmore, Shohl, Sawyer and Dinsmore, Cincinnati, for appellant.

Hon. Hugh S. Jenkins, Attorney General and Daronne R. Tate, Assistant Attorney General, for appellee.

This cause and matter came on to be heard and considered by the Board of Tax Appeals upon an appeal filed herein under date of March 20, 1945, by the appellant above named from an order of the tax commissioner under date of February 28, 1945, denying an application for review and redetermination as to certain increased tax assessments made and certified against the appellant, a dealer in intangibles, for the tax years 1942 and 1943. Said cause was heard upon said appeal, upon a transcript of the proceedings of the tax commissioner relating to the tax assessments complained of, upon the evidence and upon the briefs of counsel.

Upon consideration of the case as thus submitted, the Board of Tax Appeals finds that on or about the 13th day of March, 1942, the appellant, a partnership doing business as a dealer in intangibles in the City of Cincinnati, Ohio, filed its tax return as such dealer in intangibles for the tax year 1942, exhibiting in detail and under appropriate heads its resources and liabilities at the close of business on the 31st day of December, 1941, and upon computation thereof the appellant determined and set out the book value of its invested capital in the amount of $209,230.00. Included in the property and assets of the appellant for said year were certain nontaxable securities having a book value of $114,230.00, $112,000.00 of which represented United States government bonds and $2,-230.00 were represented by shares of stock owned by the ap-

pellant in certain financial institutions. From the book value of its invested capital in the amount of $209,230.00 the appellant deducted the value of such nontaxables in the amount of $114,230.00, leaving the sum of $95,000.00 as the amount of its taxable capital; upon which sum the tax extended at the five mill rate provided for by §5638-1 GC amounted to the sum of $475.00.

The tax commissioner on final audit of the appellant's tax return for said year was of the view that the taxpayer was not authorized to deduct from the amount of capital employed the full amount of the book valuation of such nontaxable securities, but that there should be deducted from the employed capital only that part of the valuation of the nontaxable securities as was equal to the proportion between the value of such nontaxable property ($114,230.00) and the value of all of the property of the taxpayer ($412,677.28) representing the capital employed. The tax commissioner, accordingly, allowed as a deduction on account of such nontaxables a sum equal to 27.68% of said sum of $209,230.00, amounting to $57,914.98. The amount of the deduction taken by the taxpayer was, as above noted, the sum of $114,230.00, of which the sum of $56,315.02 was disallowed by the tax commissioner. This sum of $56,315.02, together with the sum of $15,070.51 representing the difference between the market value and the appellant's list value of an inventory of stocks owned by the appellant, was added back in determining the taxable net worth of the appellant; which amount as determined by the tax commissioner was the sum of $166,380.00 instead of the sum of $95,000.00 as returned by the taxpayer. This resulted in an increased tax assessment of $356.90 against the appellant for said year. On or about the 23rd day of March, 1943, the appellant filed with the tax commissioner its tax return as a dealer in intangibles, for the tax year 1943. In this tax return the taxpayer, as required by statute, listed the items exhibiting its resources and liabilities as of December 31, 1942, and upon such statement computed the value of its invested capital as of said date and determined the same to be the sum of $191,200.01. From this sum the appellant deducted the value of its nontaxable securities in the amount of $114,230.00 and thereby determined the net taxable value of its invested capital to be the sum of $76,970.01. The tax commissioner on final audit of this tax return, following the rule above noted as to the deduction to be made from appellant's capital on account of such nontaxable securities, determined that the value of such nontaxables was 29.3172% of the value of all

of the property and assets of the appellant ($389,633.69) making up the resources of the partnership for said year. 29.-3172% of $191,200.01 amounts to $56,054.49, which is the amount allowed by the tax commissioner as a deduction from the value of the appellant's invested capital on account of such nontaxable securities. The balance of said sum of $114,230.00 (the book value of the nontaxable securities), amounting to the sum of $58,175.51, together with an additional amount of $13,688.00 representing the difference between the market value and the appellant's list value of its inventory of shares of stock, was added back by the tax commissioner in determining the appellant's taxable net worth for said tax year with the result that this amount was determined to be the sum of $148,834.00 instead of the sum of $76,970.00 as determined by the taxpayer in its tax return for said year. This action of the tax commissioner resulted in an increased tax of $359.32 for said year.

As above noted, this appeal is from a final order of the tax commissioner which denied an application for review and redetermination theretofore filed by appellant with respect to said increased tax assessments against it as a dealer in intangibles for the tax years 1942 and 1943, respectively. As its first assignment of error herein the appellant claims that certain government bonds owned by it and having a stated book value of $114,230.00 were not used in business by it during and with respect to the tax years here in question and that for this reason the tax commissioner was not authorized to include such government bonds or any part thereof in determining the amount of "capital employed in this state" by the appellant in estimating the amount of taxes to be assessed against it as a dealer in intangibles for said tax years. As to this claim of the appellant, it is noted that §5414-2, GC, provides, among other things, that the property representing capital employed in this State by an unincorporated dealer in intangibles whose capital stock is not divided into shares, and who has an actual place of business in this State, shall be listed and assessed at the fair value thereof and taxed in the manner prescribed by the chapter of the General Code of which this section is a part. By §5414-4 GC, each dealer in intangibles, whether incorporated or unincorporated, is required to file an annual report with the Department of Taxation setting out its resources and liabilities in the manner prescribed by this section. Sec. 5414-5 GC, provides as follows:

"Upon receiving such report the commissioner shall ascertain and assess all the shares of such dealers in intangibles, the capital stock of which is divided into shares, representing capital employed in this state, and the value of the property representing the capital employed in this state by such dealer in intangibles, not divided into shares, according to the aggregate fair value of the capital, the surplus and the undivided profits as shown in such report, including therein, in the case of an unincorporated dealer, the value of property converted into non-taxable bonds or securities within the preceding year without deduction, as shown in such report. In the case of a dealer having separate offices within and outside of this state the commissioner shall determine the amount of capital employed in this state in the proportion that the gross receipts at the office or offices in this state, as shown by the report, bears to the entire gross receipts of such dealer, as so shown.

"The aggregate book value of the capital, the surplus and the undivided profits of a dealer in intangibles as shown in such report shall be taken to be the fair value thereof for the purpose of the assessment required by this section unless the commissioner shall find that such book value is greater or less than the then fair value of said capital, surplus and undivided profits. Claim for any deduction from book value of capital, surplus and undivided profits must be made in writing by the dealer in intangibles at the time of making return.

"Whenever the commissioner shall assess the fair value of the capital, surplus and undivided profits of a dealer in intangibles at an amount in excess of the book value thereof as shown by its report, or shall disallow any claim for deduction from book value of such capital, surplus and undivided profits, it shall give notice as provided in §5394 GC, and proceed as therein required."

With respect to appellant's claim that certain of the United States government bonds owned by the appellant were not used in business by it and, for this reason, should not have been included as a part of its capital for the tax years here in question, it appears from the evidence that during the years 1942 and 1943 the appellant was the owner of United States government bonds in the amount and value of $123,-000.00, of which bonds in the amount of $100,000.00 were kept by the appellant in a safety deposit box in the bank building of the Central Trust Company and that $23,000.00 of such bonds were used as collateral on a loan made to the appellant

by the Central Trust Company. Touching the question here presented, the authorities support the view stated as a principle in Cooley on Taxation (4th Ed.) Vol. 2, section 919, as follows:

"Capital is 'employed' in the state where it is used by the corporation in the transaction of ordinary business, as distinguished from a mere independent investment, although if a corporation is a holding one or a real estate or an investment company, or the like, then investments as a part of the regular business constitute the employment of capital within the state. The distinction between capital 'employed' and capital 'invested' has no application to corporations formed for the sole purpose of the investment of capital, such as real estate companies, since it is only where the corporation was created for a different purpose that the mere investment or passive use of capital has been deemed not an employment thereof."

In the application of this principle or rule of law to the question here presented, it is to be noted that the appellant is a dealer in intangibles within the definitive provisions of §5414-1 GC, and that as such was engaged in the business of buying and selling bonds, stocks or other investment securities. And in this view its investments in government bonds as a part of its business was an employment of capital within this State within the purview of the sections of the General Code above noted. The Board finds, therefore, that the tax commissioner did not err in finding that such government bonds were a part of the capital employed by the appellant during the tax years here in question.

In this appeal a further assignment of error is made in which the appellant complains of the action of the tax commissioner in deducting from appellant's capital only a part of the book value of the nontaxable securities owned and held by it, and thereby including the balance of the valuation of such nontaxables in and as a part of the appellant's taxable capital. In the consideration of the question thus presented it is recognized that the tax on dealers in intangibles provided for by §5414-1 et seq., GC is a property tax as distinguished from a franchise tax or other form of excise taxes; and that in this case where the tax is on the appellant as an unincorporated dealer in intangibles, the tax is on the employed capital of the appellant itself—unlike the case where the dealer in intangibles is a corporation and the ultimate incidence of the tax is on the shares of stock as property of the shareholders. In this situation and recognizing that the great-

er bulk of the nontaxable securities here in question consists of United States government bonds, we are required to give application to the principle that the State has no power to assess against a corporation or other like entity a tax which is essentially a property tax, as distinguished from a franchise, privilege or excise tax, without allowing a deduction for sums invested in securities of the United States; and this is true whether the tax purports to be one laid directly upon the property or upon the capital of such entity. Home Ins. Co. v. New York, 134 U. S. 594, 33 L. ed. 1025; Home Sav. Bank v Des Moines, 205 U. S. 509, 521 In Cooley on Taxation (4th Ed.) Vol. 2, section 888, it is said:

"If a tax on capital or capital stock is deemed to be a property tax rather than an excise tax, then of course it cannot be imposed upon such stock so far as represented by property which the state could not lawfully tax, since what is forbidden directly cannot be accomplished indirectly; and such property cannot be indirectly reached by a tax on its capital without deducting the value of the nontaxable property. In other words, in valuing the capital stock, there must be a deduction of the amount represented by such nontaxable property. This includes not only property expressly exempted by the constitution, statute or charter, but also property impliedly exempt from state taxation because a federal agency, —such as United States bonds * * *,—or because permanently located outside the state so as not to be subject to the jurisdiction of the state to tax."

In this connection it is noted that Attorney General Bettman in an opinion reported in Opinions of the Attorney General, 1932, Vol. I, page 558, had occasion to consider this question in its relation to the tax on domestic insurance companies provided for by the original provisions of §5414-8 et seq., GC; which tax, unlike the present tax on domestic insurance companies, but quite like the tax on dealers in intangibles here under consideration, was a property tax and not a franchise or other form of excise tax. In the opinion of the attorney general here referred to it was held, among other things, that in computing the capital and surplus of a domestic insurance company with capital, or the surplus of such a company without capital, for the purposes of taxation under the then provisions of §5414-8 et seq., GC, so much of the assets as are invested in bonds or other securities of the United States, must be deducted. In this opinion of the attorney general it is said:

"Although, as above noted, the tax on domestic insurance companies is not one laid directly on the property of such companies but is a tax on the capital and surplus of such companies having capital divided into shares, and upon the surplus of such companies that do not have capital divided into shares, such tax is clearly a property tax as distinguished from a franchise or privilege tax or other form of excise taxes. In this view, it is to be noted with respect to the first question presented in your communication and other related questions therein stated, that the capital and surplus or the surplus, as the case may be, of a domestic insurance company can not be taxed in so far as the same is invested in property which the legislature could not legally tax. New York v Tax etc., Commissioners, 2 Black 260, 17 U. S. (L. Ed.) 451; Bank Tax Case, 2 Wall, 200, 17 U. S. (L. Ed.) 793."

Touching this question, it is noted that the case of Packard Motor Car Co. v Detroit, 232 Mich. 245, 205 N W 106, presented the question of the legality of a tax assessed against said company under a statute of the State of Michigan which provided as follows:

"For the purpose of taxation personal property shall include * * * all credits of every kind belonging to inhabitants of this state, whether such indebtedness is due from individuals or from corporations, public or private, and whether such inhabitants reside within or without the state, except such as are expressly exempt from taxation by law * * *. The following personal property shall be exempt from taxation, to wit; * * * so much of the debts due or to become due as shall equal the amount of bona fide and unconditional debts by the person owning; provided, that if such person shall be the owner of credits that are exempt from taxation such portion only of his indebtedness shall be deducted from debts due or to become due as is represented by the ratio between taxable credits and total credits owned, whether taxable or nontaxable."

On the facts presented in the cited case it appeared that the company's taxable credits amounted to the sum of $6,541,-620.00; and the total amount of the company's credits, taxable and nontaxable, amounted to $18,814,094.00; while the bona fide debts of the company amounted to $9,391,045.00. The company claimed that it should pay no tax upon its taxable credits because its bona fide debt exceeded such credits. Acting pursuant to the provisions of the statute above noted, the

assessor, finding the company's total credits, taxable and non-taxable amounted to the sum of $18,814,094.00, as above noted, determined that there should be deducted from the company's taxable credits only that portion of its debts represented by the ratio which its taxable credits bore to its total credits, taxable and nontaxable, and in assessing the taxable credits the assessor deducted only 34.8% of its debts; that is to say, of the debts of the company in the amount of $9,391,045 the assessor only allowed the sum of $3,268,083 as a deduction from the company's taxable credits, leaving $3,273,537 of its taxable credits subject to tax. By this means a tax in the amount of $76,552.80 was assessed against the company for the tax year in question. And the company instituted an action to recover the amount of this tax as one illegally assessed against it. From a judgment of the circuit court, in which such action was filed, dismissing its petition, the company filed its petition in error to the Supreme Court of that state. The Supreme Court of the State of Michigan in reversing the decision and judgment of the circuit court, held that said statute and the tax assessed against the company under its provisions were invalid. In its opinion in this case the Court said:

"Tax-exempt credits cannot be taxed, directly or indirectly. In laying a tax on property, tax-exempt credits must be treated as nonexistent. The legislature may not make use of, or permit consideration to be taken of, tax-exempt credits as a factor in determining taxes to be paid by holders thereof. To do so would attach a consideration to the enjoyment thereof wholly incompatible with the issuance thereof, and impair the underlying contract. The purpose of this statute is manifest, and the effect thereof touches tax-exempt credits; not to directly tax them, but to make the holders pay more in taxes by reason of having them. This cannot be done. Farmers & M. Sav. Bank v Minnesota (1914) 232 U. S. 516, 58 L. ed. 706, 34 Sup. Ct. Rep. 354. This provision offends against the rule of proportion, intended to insure uniformity of contribution and a just apportionment of the burdens of government, by way of rating the tax upon a consideration of tax-exempt credits as well as upon taxable credits and unconditional obligations. Tax-exempt credits may not be considered at all by assessing officers in the matter of determining a property tax, and they are considered when used as a factor in apportioning the right to set off unconditional obligations against tax-

able credits. Most of the tax-exempt credits held by plaintiff are obligations of the United States government."

In the case of State v Missouri, ex rel., Missouri Insurance Company v Gehner, 281 U. S. 313, 74 L. ed. 870, there was presented to that Court on appeal from a judgment of the Supreme Court of the State of Missouri, the question as to the validity of a tax on the property of the insurance company's assets which included certain United States bonds. The question there presented arose under the provisions of a statute of that state relating to the taxation of the property of insurance companies. This statute (Sec. 6386, Revised Statutes of Missouri, 1919) provided:

"The property of all insurance companies organized under the laws of this state shall be subject to taxation for state, county, municipal and school purposes, as provided in the general revenue laws of this state in regard to taxation and assessment of insurance companies. Every such company or association shall make returns, subject to the provisions of said laws: First, of all the real estate held or controlled by it; second, of the net value of all its other assets or values in excess of the legally required reserve necessary to reinsure its outstanding risks and of any unpaid policy claims, which net values shall be assessed and taxed as the property of individuals."

The insurance company made a return for the tax there in question pursuant to the provisions of this section. From its return it appeared that the total value of its personal property was $448,265.33, including $94,000 in United States bonds. The legal reserve and unpaid policy claims amounted to $333,486.69. The company in its return deducted such bonds, reserve and claims, leaving $20,778.64 as the net value of its assets to be taxed. It further appears that the State Board of Equalization, on consideration of this tax return, held that the bonds of the United States owned by the company were not taxable; that the statute above noted contravened the provisions of the state constitution requiring uniform taxation; and that, therefore, the company was not entitled to deduct the 'amount of such reserve and policy claims. Thereafter the case came before the Supreme Court of Missouri on the issuance by that court of a writ of certiorari to bring up for review the record and action of the State Board of Equalization. That court

held that the statute above referred to was valid and that the company's liabilities were chargeable against all its assets—taxable and nontaxable alike—and held that such reserve and policy claims should be apportioned with respect to the taxable and nontaxable assets, respectively, according to their several amounts. And by this method of computation the court found the net taxable value of the property and assets of the company to be the sum of $74,-136.52.

Thereafter this case came on to be heard by the Supreme Court of the United States on appeal from the decision and judgment of the State Supreme Court. The judgment of the state court was reversed. And touching the question there presented, the Supreme Court of the United States, speaking through Mr. Justice Butler, said:

"It is elementary that the bonds or other securities of the United States may not be taxed by state authority. That immunity always has been deemed an attribute of national supremacy and essential to its maintenance. The power of Congress to borrow money on the credit of the United States would be burdened and might be destroyed by state taxation of the means employed for that purpose. As the tax-exempt feature tends to increase and is reflected in the market prices of such securities, a state tax burden thereon would adversely effect the terms upon which money may be borrowed to execute the purposes of the general government. It necessarily follows from the immunity created by Federal authority that a state may not subject one to a greater burden upon his taxable property merely because he owns tax-exempt government securities. Neither ingenuity in calculation nor form of words in state enactments can deprive the owner of the tax exemption established for the benefit of the United States. National L. Ins. Co. v United States, 277 U. S. 508, 519, 72 L. ed. 968, 970, 48 Sup. Ct. Rep. 591; and cases cited; M'Culloch v Maryland, 4 Wheat, 316, 431, 432, 436, 4 L. ed. 579, 607-609.

"After deducting government bonds (exempt), real estate (otherwise taxed), legal reserve and unpaid policy claims from total assets, there remained the amount returned by appellant, $20,778.64. The court held the section to require the reserve and unpaid claims to be reduced by the proportion that the value of the United States bonds

bears to total assets. It found $74,136.52 to be appellant's taxable net value. And so it used the value of the bonds, $94,000, to increase the taxable amount by $53,357.88.

"The section discloses a purpose as a general rule to omit from taxation sufficient assets of the insurance companies to cover their legal reserve and unpaid policy claims. It would be competent for the state to permit a less reduction or none at all. But where, as in this case, the ownership of United States bonds is made the basis of denying the full exemption which is accorded to those who own no such bonds, this amounts to an infringement of the guaranteed freedom from taxation. It is clear that the value of appellant's government bonds was not disregarded in making up the estimate of taxable net values. That is in violation of the established rule. National L. Ins. Co. v United States, supra; Northwestern Mut. L. Ins. Co. v Wisconsin, 275 U. S. 136, 72 L. ed. 202, 48 Sup. Ct Rep. 55; Miller v Milwaukee, 272 U. S. 713, 71 L. ed. 487, 47 Sup Ct. Rep. 280."

It is quite evident from the order of the tax comissioner denying the appellant's application for review and redetermination of the additional tax assessments made against it for the tax years 1942 and 1943, here in question, that this officer was of the view that the statutes providing for the taxation of dealers in intangibles required him to make a proportionate and partial deduction only of and with respect to United States bonds and other nontaxable securities owned by the appellant, in determining the taxable employed capital of the appellant for said tax years. There is no express provision of this kind in any of the statutes relating to the taxation of dealers in intangibles; and if, on any view, a requirement of this kind can be found in any such statutes, it must be implicit therein by way of construction of the general provisions of the sections of the General Code as to the method of determining the taxable employed capital of such dealers. Although there is, admittedly, some doubt as to the authcrity of the Board of Tax Appeals as a quasi judicial tribunal to pass on the constitutionality of statutes and to strike down statutes determined by it to be unconstitutional, this Board, like courts and other tribunals possessing judicial or quasi judicial authority, is required to construe statutes so as to preserve, if possible, the provisions thereof as enacted. And in

this view the Board of Tax Appeals is unable to find anything in the provisions of §5414-1 et seq., GC, relating to the taxation of dealers in intangibles which authorizes the tax commissioner, by the use of any formula, to include as a part of the employed capital of a dealer in intangibles any part of the valuation of United States bonds or other nontaxable securities owned by such taxpayer. The Board of Tax Appeals is of the opinion that in this respect the tax commissioner was in error in making the order and increased tax assessments herein complained of; and it is by the Board considered and ordered that said order of the tax commissioner be, and the same hereby is, reversed, and that this cause and matter be remanded to the tax commissioner for further proceedings not inconsistent with this order and entry of the Board of Tax Appeals.

BOARD OF TAX APPEALS.