ATLAS LIFE INSURANCE COMPANY,
a Corporation, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. No. 5413.

United States District Court
N. D. Oklahoma.

May 1, 1963.

Dickson M. Saunders of Doerner, Stuart, Moreland, Campbell & Saunders, Byron V. Boone of Boone & Ellison, Tulsa, Okl., Thomas C. Thompson, Jr., of Bird & Thompson, Washington, D. C., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Myron C. Baum, George A. Hrdlicka, Robert L. Waters, Attys., Dept. of Justice, Washington, D. C., John M. Imel, U. S. Atty., Sam Taylor, Asst. U. S. Atty., for defendant.

Charles E. Norman, Tulsa, Okl., filed brief amicus curiae for City of Tulsa.

Peyton Ford, of Ford, Larson, Greene & Horan, Washington, D. C., and Devereaux F. McClatchey, Atlanta, Ga., filed brief amicus curiae of Nat. Assn. of Life Companies.

J. Lon Duckworth, Atlanta, Ga., filed brief of Life Insurers Conference as amicus curiae.

BOHANON, District Judge.

This case involves a claim for income tax refund for the year 1958. Atlas Life Insurance Company, a corporation, hereinafter referred to as Atlas or Taxpayer, filed this suit against the United States of America seeking a refund in the sum of $22,782.35, or such greater amount as may be due, for alleged overassessment by the Government of income taxes for the year 1958. The claim for

refund has been reduced to $12,692.93, not by the pleadings, but by the evidence offered on behalf of Atlas and by Atlas' final Brief filed with the Court.

Plaintiff filed its tax return for the year 1958 in due time and thereafter timely filed its claim for refund. No action having been taken by the Government within the time provided by law, 26 U.S.C.A. § 7422(a), thereafter this action was filed, as required by 26 U.S.C.A. § 6532(a).

Certain adjustments in the Atlas' return show it entitled to a refund of $1,440.74. This amount is not in dispute.

The claim made here by Atlas involves the application and interpretation of the Internal Revenue Code of 1954, as amended by the Life Insurance Company Income Tax Act of 1959, 26 U.S.C.A. § 801 et seq.

Atlas contends that by the application of the definition of "Taxable Investment Income" (Section 804(a) (2)) and of the application of the definition of "Gain From Operations" (Section 809(b) (1)) of the Act results in the imposition of a tax on tax-free interest from state and municipal bonds owned by Atlas, which interest income should be excluded from its gross income under Section 103 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 103; Atlas claims that the Government refused to make adjustments required by Sections 804(a) (6) and 809 (b) (4), thus imposing a tax on tax-exempt interest which is excluded from gross income under Section 103, supra.

By the Internal Revenue Code of 1954, as amended by the Life Insurance Company Act of 1959, hereinafter called the Act, Congress provided a method of taxing life insurance companies, taking into consideration interest which is not to be included in gross income under Section 103. This interest is one of several factors to be employed in determining the amount of the Taxpayer's taxable income. We are here concerned only with two phases of the various steps involved in arriving at taxable income; that is, (1) taxable investment income, and (2) gain from operations.

Considering the first, "taxable investment income": The Act, Section 804(a) (1) and (2) provides:

"(a) In general.—

"(1) Exclusion of policyholders' share of investment yield.—The policyholders' share of each and every item of investment yield (including tax-exempt interest, partially tax-exempt interest, and dividends received) of any life insurance company shall not be included in taxable investment income. For purposes of the preceding sentence, the policyholders' share of any item shall be that percentage obtained by dividing the policy and other contract liability requirements by the investment yield; except that if the policy and other contract liability requirements exceed the investment yield, then the policyholders' share of any item shall be 100 percent.

"(2) Taxable investment income defined.—For purposes of this part, the taxable investment income for any taxable year shall be an amount (not less than zero) equal to the amount (if any) by which the net long-term capital gain exceeds the net short-term capital loss plus the sum of the life insurance company's share of each and every item of investment yield (including tax-exempt interest, partially tax-exempt interest, and dividends received), reduced by—

"(A) the sum of—

"(i) the life insurance company's share of interest which under section 103 is excluded from gross income.

"(ii) the deduction for partially tax-exempt interest provided by section 242 (as modified by paragraph (3)), computed with respect to the life insurance company's share of such interest, * * *."

Section 804(a) (6) provides:

"Exception.—If it is established in any case that the application of the definition of taxable investment in-

come contained in paragraph (2) results in the imposition of tax on—

"(A) any interest which under section 103 is excluded from gross income,

"(B) any amount of interest which under section 242 (as modified by paragraph (3)) is allowable as a deduction, * * *

adjustment shall be made to the extent necessary to prevent such imposition."

The pertinent section of the Act relating to gains from operations, Section 809(b), provides:

"(b) Gain and loss from operations.—

"(1) Gain from operations defined.—For purposes of this part, the term "gain from operations" means the amount by which the sum of the following exceeds the deductions provided by subsection (d):

"(A) the life insurance company's share of each and every item of investment yield (including tax-exempt interest, partially tax-exempt interest, and dividends received);

"(B) the amount (if any) by which the net long-term capital gain exceeds the net short-term capital loss; and

"(C) the sum of the items referred to in subsection (c).

"(2) Loss from operations defined.—For purposes of this part, the term "loss from operations" means the amount by which the sum of the deductions provided by subsection (d) exceeds the sum of—

"(A) the life insurance company's share of each and every item of investment yield (including tax-exempt interest, and dividends received);

"(B) the amount (if any) by which the net long-term capital gain exceeds the net short-term capital loss; and

"(C) the sum of the items referred to in subsection (c).

"(3) Life Insurance company's share.—For purposes of this subpart, the life insurance company's share of any item shall be that percentage which, when added to the percentage obtained under the second sentence of subsection (a) (1), equals 100 percent."

Section 809(b) (4) provides:

"(4) Exception.—If it is established in any case that the application of the definition of gain from operations contained in paragraph (1) results in the imposition of tax on—

"(A) any interest which under section 103 is excluded from gross income.

"(B) any amount of interest which under Section 242 (as modified by Section 804(a) (3)) is allowable as a deduction, * * *

adjustment shall be made to the extent necessary to prevent such imposition."

There is no dispute about the facts. A question of law only is presented here which can be resolved by an examination of the testimony, briefs, and especially the Taxpayer's return and the definition of "taxable investment income" and "gains from operations" as defined by the Act, supra.

Determination of taxable investment income and gain from operations is determined as follows: *Taxable investment income*: from gross investment income, Section 804(b), which includes tax-exempt interest, less certain deductions, Section 804(c) (1), resulting in a figure known as "investment yield," Section 804(c). *This yield is then divided into two parts*, (1) the policyholders' share, (2) the company's share. This division is made *by the use of a percentage determined as provided by Section 805 of the Act.* The entire part belonging to the policyholders as determined by the formula, including tax-exempt interest, is

excluded from taxable income, Section 804(a) (1). The company's portion of each item of investment yield is then reduced by its portion of tax-exempt interest and other specified deductions, Section 804(a) (2). The resulting figure is the company's tax base for "taxable investment income," the first phase upon which the tax is imposed. Tax-exempt interest on the company's share of investment income, as can be seen, is wholly excluded in arriving at the final figure representing taxable investment income.

Turning to the second phase, *gain from operations*: Entering into the Taxpayer's taxable income is included the company's share of each item of investment yield, including tax-exempt interest, long-term capital gain, and other items includable in gross income under Section 61, Internal Revenue Code of 1954 (26 U.S.C.1958 edition, Section 61) not otherwise included. Sections 809(b) (1) and 809(c). This amount is reduced by certain deductions, including the company's share of tax-exempt interest (809 (d) (8)). Tax-exempt interest with respect to gain from operations is treated exactly in the same manner as such interest is treated in determining taxable investment income.

The problem involved here is the application of the formula for treatment of tax-exempt interest with respect to taxable investment income and gain from operations. By use of the formula provided by Section 804(a) (2) and Section 809(b) (1) the percentage of the policyholders' share of income in this case is less than it would be if tax-exempt interest was not included or considered in gross income for the purpose of the computation as provided by Section 804, supra, thereby leaving a greater portion as the company's share, resulting in a greater tax liability.

Atlas' Exhibit 6, being its return filed in compliance with the Act and regulations of the Internal Revenue Service, shows the policyholders' share of investment income is 85.33% plus, and the company's share 14.66% plus, and the policyholders' share of gain from operations 87.93% plus, and, the company's share 12.66% plus. Atlas' Exhibit 7, being a tax form prepared by it in line with its theory of the law, excludes from any consideration all tax-exempt interest, and shows the policyholders' share of investment income as 86.64% plus, and the company's share 13.39% plus, and gain from operations 91.12% plus and 8.87% plus, respectively, *reducing the amount of the company's income and thus its tax*. The Taxpayer contends that under Section 804(a) (6) and 809 (b) (4), the exception provisions of the Act, the application of the formula used by the Government results in a tax on its non-taxable interest income and therefore an adjustment should be made to prevent such tax. Under the formula used by the Government and as provided by the Act, company's tax-exempt interest is included in gross income and then deducted before reaching the tax base of the Taxpayer. The Taxpayer's formula excludes tax-exempt interest from the beginning. The inclusion or exclusion of tax-exempt interest results in the difference between the tax imposed and the claimed refund.

Atlas contends that the formula for determining its income tax is unconstitutional in that a tax is laid upon its tax-exempt interest income. I do not agree. The Act simply classifies income for purposes of taxation and no tax is laid upon tax-exempt interest received by Atlas. The Power of Congress to lay and collect taxes is plenary subject only to certain constitutional restrictions not here present. The Congress may classify incomes for the purpose of taxation. The formula provided by Congress is for all similar life insurance companies and does not discriminate against any, including Atlas.

To adopt the formula urged by Atlas would amount to a striking down of the formula adopted by Congress, which this Court will not approve, and at the same time set up a formula not provided by Congress. In the Atlas for-

mula it gives no consideration to interest from tax-exempt securities as income. This is certainly unrealistic. For the power of Congress to classify income and lay a tax thereon see Denman v. Slayton, 282 U.S. 514, 51 S.Ct. 269, 75 L.Ed. 500. In this case the Taxpayer was engaged in buying and selling tax-exempt municipal bonds. In 1922 he collected $65,720.06 as interest on these securities and paid out $78,153.84 for interest on money borrowed in due course to purchase and carry exempt securities. In his tax return he excluded the interest so collected and claimed a deduction for interest paid out on borrowed money. The Tax Commissioner disallowed the deduction. The Court said:

"Determination of the question involved must turn upon the validity, construction and effect of Sections 213 and 214, Revenue Act of 1921, 42 Stat. 227, 237, 238, 239. Their pertinent provisions follow.

" 'Sec. 213. That for the purposes of this title  *  *  *  the term "gross income"—  *  *  *

" '(b) Does not include the following items, which shall be exempt from taxation under this title: *  *  *

" '(4) Interest upon (a) the obligations of a State, Territory, or any political subdivision thereof, or the District of Columbia;  *  *  *

" 'Sec. 214(a) That in computing net income there shall be allowed as deductions:  *  *  *

" '(2) All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations or securities (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from taxation under this title;  *  *  *' "

The taxpayer in Denman v. Slayton, supra, contended that the exception found in paragraph (2), Section 214(a) conflicts with the Federal constitution in that by necessary operation it discriminates against owners of non-taxable securities; also that the Act is discriminatory and unconstitutional in that necessary expenses incident to all kinds of businesses, including interest paid for carrying inventories, et cetera, are allowed as operation costs, where as deduction of interest paid by the taxpayer upon funds borrowed to carry non-taxable securities is prohibited. Taxpayer further contended that the Act is arbitrary and unconstitutional for it discriminates against him whose resources do not permit him to purchase tax-free securities for cash. The Court then said, Page 519, 51 S.Ct. page 270:

"While guaranteed exemptions must be strictly observed, this obligation is not inconsistent with reasonable classification designed to subject all to the payment of their just share of a burden fairly imposed.  *  *  * The classification complained of is not arbitrary, makes no improper discrimination, does not result in defeating any guaranteed exemption, and was within the power of Congress. The fact that respondent engaged in the business of buying and selling is not important."

The exception provisions of the Act, § 804(a) (6) and § 809(b) (4) were enacted by Congress to make doubly sure that tax-exempt interest would not in fact be taxed and that if by some misapplication of the formula or mathematical error it is taxed, then by application of these provisions an adjustment would be made.

Atlas relies heavily on National Life Insurance Company v. United States, 277 U.S. 508, 48 S.Ct. 591, 72 L.Ed. 968, and State of Missouri, ex rel. Missouri Insurance Company v. Gehner, 281 U.S. 313, 50 S.Ct. 326, 74 L.Ed. 870. These cases do not support the Taxpayer's position. In National Life the Court held as unconstitutional Section 245(a) of the Revenue Act of 1921, 42 Stat. 227, which provided that a reserve deduction allowed to all insurance companies should

462

be reduced by the amount of tax-exempt interest received. The Court in essence held that by pro tanto denying a deduction solely by reason of receipt of tax-exempt interest, the Congress had imposed a tax on that interest which was constitutionally exempt. In Missouri v. Gehner, the Court held unconstitutional a state property tax on net worth of insurance companies which, in computing net worth, allowed a deduction for federal bonds, but required a pro rata deduction in the deduction that was otherwise allowable for insurance reserves. No comparable denial of deductions is made by the Act here in question. These cases cannot be so narrowly construed as urged by Atlas. See Denman v. Slayton, supra.

Having reached the conclusion that by the application of the Act, tax-exempt interest received by Atlas is not in fact taxed, judgment will be entered denying the claimed refund, except to the extent of $1,440.74 resulting from adjustments agreed upon by the parties.