## MISSOURI EX REL. MISSOURI INSURANCE COMPANY v. GEHNER, ASSESSOR OF THE CITY OF ST. LOUIS, ET AL.

No. 222.   Argued February 26, 1930.—Decided April 14, 1930.

314

*Mr. Ralph T. Finley,* with whom *Messrs. James C. Jones, Lon O. Hocker, Frank H. Sullivan,* and *James C. Jones, Jr.,* were on the brief, for appellant.

*Mr. Oliver Senti,* First Associate City Counselor of St. Louis, with whom *Messrs. Julius T. Muench,* City Counselor, *Stratton Shartel,* Attorney General of Missouri, and *Lieutellus Cunningham,* Assistant Attorney General, were on the brief, for appellees.

316

Mr. Justice Butler delivered the opinion of the Court.

Appellant is an insurance company organized under the laws of Missouri. It maintains that as construed in this case § 6386, Revised Statutes of Missouri, 1919, is repugnant to the Constitution and laws of the United States.

Section 6386 provides:

"The property of all insurance companies organized under the laws of this state shall be subject to taxation for state, county, municipal and school purposes, as provided in the general revenue laws of this state in regard to taxation and assessment of insurance companies.

Every such company or association shall make returns, subject to the provisions of said laws: First, of all the real estate held or controlled by it; second, of the net value of all its other assets or values in excess of the legally required reserve necessary to reinsure its outstanding risks and of any unpaid policy claims, which net values shall be assessed and taxed as the property of individuals . . ."

The company made a return in pursuance of that section. The total value of its personal property was $448,265.33 including $94,000 in United States bonds. The legal reserve and unpaid policy claims amounted to $333,486.69. It deducted such bonds, reserve and claims leaving $20,778.64 as the net value to be taxed.[1]

The board of equalization declined to accept the return and after hearing the parties held that the bonds of the United States are not taxable, that § 6386 contravenes provisions of the state constitution requiring uniform taxation, and that therefore the company was not entitled to deduct the amount of such reserve and claims.

---

[1] The substance of the return follows:

| | |
|---|---:|
| Real Estate, Improvement, etc. | $142,000.00 |
| Bonds, Municipal | 289,000.00 |
| Bonds, Government | 94,000.00 |
| Bonds, Mortgages | 60,000.00 |
| Cash | 5,265.33 |

| | | |
|---|---:|---:|
| Total Assets | | $590,265.33 |
| Less Real Estate assessed as above and on which the Company pays taxes | $142,000.00 | |
| Less reserve required by law | 326,522.69 | |
| Less U. S. Government Bonds | 94,000.00 | |
| Less Unpaid Policy Claims | 6,964.00 | |
| | | $569,486.69 |
| | | $20,778.64 |

The board assessed the company's taxable property at $50,000 without disclosing how it arrived at the amount.

On the company's application, the state supreme court issued its writ of certiorari to bring up for review the record and action of the board. The court held the section valid, found the company's liabilities were chargeable against all its assets—taxable and nontaxable alike— declared that such reserve and claims should be apportioned between the two classes of assets according to their respective amounts and determined that approximately 79.03 per cent. of such liabilities should be deducted from the value of the taxable personal property leaving $90,710.80 as the net value to be taxed.[2] And as that exceeded the amount fixed by the board, the court refused to disturb the assessment, and entered judgment quashing the writ.

The company made a motion for rehearing on the ground, among others, that § 6386 as construed violated the clause of § 8, Art. I, of the Constitution which gives to Congress the power to borrow money on the credit of the United States and also § 3701, Revised Statutes (31 U. S. C., § 742) which provides that all bonds of the United States shall be exempt from taxation by or under state, municipal or local authority. The court overruled the motion and modified its opinion. The modified opinion was the same as the earlier one except as to details of calculation. It found $74,136.52 to be the tax-

---

[2] The calculation in the first opinion was in substance as follows:

The court divided total taxable assets $354,265.33 ($349,000 bonds and $5,265.33 cash) by total personal assets $448,265.33 ($349,000 bonds, $5,265.33 cash and $94,000 United States bonds). The result was .7903. Total liabilities $333,486.69 ($326,522.69 reserve and $6,964.00, unpaid policy claims) was multiplied by .7903. The result was $263,554.53. This was subtracted from $354,265.33, and the difference was $90,710.80.

able net value.[3]    The court did not refer to the federal questions raised by the motion for rehearing.

1. It is well settled that this court will not consider questions that were not properly presented for decision in the highest court of the State.   Ordinarily it will not consider contentions first made in a petition to the state court for rehearing where the petition is denied without more.   *Citizens National Bank* v. *Durr,* 257 U. S. 99, 106. But here the company, at the first opportunity, invoked the protection of the federal Constitution and statute. It could not earlier have assailed the section as violative of the Constitution and laws of the United States.   The board of equalization completely eliminated the bonds from its calculations, and there is nothing in the language of the section to suggest that it authorizes any diminution of the amount of the deductible reserve and unpaid claims or an apportionment of such liabilities between taxable and nontaxable assets.   It may not reasonably be held that the company was bound to anticipate such a construction or in advance to invoke federal protection against the taxation of its United States bonds.   Upon the facts disclosed by this record it is clear that appellant sufficiently raised in the highest court of the State the federal questions here presented and is entitled to have them considered. *Saunders* v. *Shaw,* 244 U. S. 317, 320. *Ohio ex rel. Bryant* v. *Akron Park District, ante,* p. 74.

2. It is elementary that the bonds or other securities of the United States may not be taxed by state authority.

---

[3] The court divided total taxable assets $496,265.33 ($349,000 bonds, $5,265.33 cash, and $142,000 real estate) by total assets $590,265.33 ($349,000 bonds, $5,265.33 cash, $94,000 United States bonds and $142,000 real estate).   The result was .84.   Total liabilities $333,486.69 was multiplied by .84.   The result was $280,128.81.   This was subtracted from $354,265.33, taxable personal assets, and the difference was $74,136.52.

That immunity always has been deemed an attribute of national supremacy and essential to its maintenance. The power of Congress to borrow money on the credit of the United States would be burdened and might be destroyed by state taxation of the means employed for that purpose. As the tax-exempt feature tends to increase and is reflected in the market prices of such securities, a state tax burden thereon would adversely affect the terms upon which money may be borrowed to execute the purposes of the general government. It necessarily follows from the immunity created by federal authority that a State may not subject one to a greater burden upon his taxable property merely because he owns tax-exempt government securities. Neither ingenuity in calculation nor form of words in state enactments. can deprive the owner of the tax. exemption established for the benefit of the United States. *Nat'l. Life Ins. Co.* v. *United States,* 277 U. S. 508, 519, and cases cited. *M'Culloch* v. *Maryland,* 4 Wheat. 316, 431, 432, 436.

After deducting government bonds (exempt), real estate (otherwise taxed), legal reserve and unpaid policy claims from total assets, there remained the amount returned by appellant, $20,778.64. The court held the section to require the reserve and unpaid claims to be reduced by the proportion that the value of the United States bonds bears to total assets. It found $74,136.52 to be appellant's taxable net value. And so it used the value of the bonds, $94,000, to increase the taxable amount by $53,357.88.

The section discloses a purpose as a general rule to omit from taxation sufficient assets of the insurance companies to cover their legal reserve and unpaid policy claims. It would be competent for the State to permit a less reduction or none at all. But where as in this case the ownership of United States bonds is made the basis of denying the full exemption which is accorded to those

who own no such bonds this amounts to an infringement of the guaranteed freedom from taxation. It is clear that the value of appellant's government bonds was not disregarded in making up the estimate of taxable net values. That is in violation of the established rule. *Nat'l. Life Ins. Co.* v. *United States, supra. Northwestern Ins. Co.* v. *Wisconsin,* 275 U. S. 136. *Miller* v. *Milwaukee,* 272 U. S. 713.

*Judgment reversed.*

The CHIEF JUSTICE concurs on the ground that this case is governed by *National Life Ins. Co.* v. *United States,* 277 U. S. 508.

MR. JUSTICE STONE.

To state the problem now presented in its simplest concrete form, if an insurance company has policy liabilities of $100,000, $100,000 of taxable personal property, and $100,000 of government bonds, its net assets would be $100,000. Under the statute of Missouri taxing net assets, as applied by the state court, one-half of this net worth or $50,000 would be subject to the tax since one-half of its entire property consists of taxable assets and so contributes one-half of the net. Under the decision of this Court, the company would go tax free, on the theory that the Constitution requires that in ascertaining the taxable net worth, tax exempt bonds must be excluded from the computation as though they were not liable for the debts of the taxpayer.

That conclusion appears to me to open a new and hitherto unsuspected field of operation for the immunity from taxation enjoyed by national and state securities as instrumentalities of government, and to accord to their owners a privilege which is not justified by anything that has been decided or said by this Court.

Since *Weston* v. *Charleston,* 2 Pet. 449, this Court, by a long line of decisions, has so restricted the immunity as to relieve only from the burden of taxation imposed on such securities or their income. The immunity has not been supposed to confer other special benefits on their owners. In every case it has been consistently applied so as to leave reasonable scope for the exercise by both national and state governments of the constitutional power to tax. *Railroad* v. *Penniston,* 18 Wall. 5; *Plummer* v. *Coler,* 178 U. S. 115; *South Carolina* v. *United States,* 199 U. S. 437, 461; *Flint* v. *Stone-Tracy Co.,* 220 U. S. 107, 162–165; *Greiner* v. *Lewellyn,* 258 U. S. 384; *Blodgett* v. *Silberman,* 277 U. S. 1, 12; see *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514, 523, 524.

The present tax differs from those which have previously been considered by the Court in this connection, in that it is not imposed on any specific identifiable property or its income. It is a tax on net worth, the value of the taxpayer's property after providing for the policy liabilities. Net worth is the result of a mathematical computation, into which of necessity enter all his assets subject to liabilities and all such obligations of the taxpayer as the statute permits to be deducted. It is the result of the computation which is the subject of the tax, and it is the subject of the tax to which exemptions are to be applied.

The immunity of government bonds from taxation does not carry with it immunity from liability for debts. *Scottish Insurance Co.* v. *Bowland,* 196 U. S. 611, 632. Hence, whether the measure of the tax be technically described as taxable net worth or as taxable assets less an allowed deduction representing liabilities to which they are subject, the state, in fixing the tax, does not infringe any constitutional immunity by requiring liabilities to be deducted from all the assets, including tax exempt bonds,

or, what comes to the same thing, by deducting from taxable assets their proportionate share of the burden of policy liabilities.

To say that debts must be deducted from taxable assets alone; that no part of the net worth of the taxpayer who owns tax-free securities may be taxed if his debts equal his tax-free assets, is equivalent to saying, in such a situation, either that the taxable assets constitute no part of the net worth or that, even though they are a part, still that part is not taxable. But it is not to be supposed that a mathematician, an accountant or a business man would regard the taxable assets as contributing nothing to surplus, or, where one-half of the taxpayer's property is tax-free, that there is any basis for saying that net worth could, on any theory, be attributed more to one class of assets than the other. Yet the result now reached would seem to presuppose that the tax-exempt securities alone had contributed to the taxpayer's net worth. These incongruous consequences of the rule applied seem to be attributable to the only assumption on which the rule itself could proceed, that government bonds, because they are tax-exempt, are also debt-exempt, or may not be used for the payment of debts, when in fact and in law tax-exempt securities constitute a part of the corporate reservoir of capital, all of which without distinction may be drawn on for the payment of obligations.

If Missouri, as it undoubtedly might, had levied a tax on all the property of appellant except its tax exempt bonds, without any deduction for its policy reserve, it is difficult to see upon what articulate principle the tax would be rendered invalid by permitting the taxpayer to deduct from the value of its assets, the same proportion of all its reserves which the taxable assets bear to the total property, all of which is liable for its policies. It would certainly not be because the ownership of the bonds was discriminated against in the apportionment of

the deduction, or burdened by the tax. Or if, one-half of the gross assets of a taxpayer being chattels without the state, it had taxed his property within the state allowing as a deduction one-half his indebtedness, I do not suppose it would have occurred to anyone to say that the levy was invalid as a tax upon the property beyond the taxing jurisdiction. Yet neither of these taxes differs from the present in its effect on the ownership of either taxable or tax-free property.

The apportionment of net worth according to the amounts of the constituent elements which enter into its computation has long been a familiar method of accountants and has repeatedly been incorporated in taxing statutes where, for one reason or other, it is desirable or necessary not to impose a tax on some of these elements. The fairness and accuracy of that method has not hitherto been questioned. ·

In *National Leather Company* v. *Massachusetts,* 277 U. S. 413, the state levied a tax upon " such proportion of the fair cash value of all the shares constituting the capital stock . . . as the value of the assets . . . employed . . . within the Commonwealth . . . bears to the total assets of the corporation." The fair cash value of all the shares was, like net worth, the result of subtracting all the obligations of the company from its gross assets. See *National Bank of Wellington* v. *Chapman,* 173 U. S. 205, 215; cf. *State Railroad Tax Cases,* 92 U. S. 575. The proportion of the net worth which was taxable because attributable to Massachusetts was computed after the deduction was made. If the theory of tax immunity here sustained had been followed, all the debts of the company would have been deducted from that part of the gross assets attributable to the state, since a taxpayer whose gross assets were all taxable would have had that privilege. While the methods of computing the taxable portion of net worth vary, the principle that

"deductions for obligations" are to be apportioned among taxables and non-taxables is supported in *Underwood Typewriter Company* v. *Chamberlain,* 254 U. S. 113; *Bass, Ratcliff &c., Ltd.* v. *Tax Commission,* 266 U. S. 271; *Shaffer* v. *Carter,* 252 U. S. 37, 56, 57; and *U. S. Glue Company* v. *Oak Creek,* 247 U. S. 321, 324, 325.[1]

It is said that the present tax must be held invalid because, as a matter of law, exemptions may not be reduced, nor may tax burdens be increased in consequence of the ownership of tax-free securities, and that in the present case their ownership was in fact used to

---

[1] The difference between the two methods may be illustrated by supposing a corporation with gross assets of $15,000,000 and obligations of $5,000,000. The fair cash value of all the shares would then be $10,000,000. Assume that one-tenth of its property is in Massachusetts. The assessment would be $1,000,000 under the *Leather Company* case. By the present method $5,000,000 would be deducted from one-tenth of the gross assets, $1,500,000, because a concern owning no exempt property might make that deduction. Under the present case the company would be free from tax.

In *Shaffer* v. *Carter,* Oklahoma levied a net income tax; in the case of residents, upon income derived from all sources; in the case of non-residents, upon locally derived income. Residents were permitted to deduct all losses, non-residents were permitted deductions only for local losses. The Court said (p. 57):

"The difference, however, is only such as arises naturally from the extent of the jurisdiction of the state in the two classes of cases, and cannot be regarded as an unfriendly or unreasonable discrimination. As to residents it may, and does, exert its taxing power over their income from all sources, whether within or without the State, and it accords to them a corresponding privilege of deducting their losses, wherever these accrue. As to non-residents, the jurisdiction extends only to their property owned within the State and their business, trade or profession carried on therein, and the tax is only on such income as is derived from those sources. Hence there is no obligation to accord to them a deduction by reason of losses elsewhere incurred."

There seems to be as colorable reason in that case as in this for asserting that the receipt of exempt income is made the basis for a reduction or elimination of an exemption granted to others.

increase taxable values. Neither proposition can, I think, be supported. First, it is not universally true that ownership of tax exempt securities may not increase the burden of a tax. Taxes upon transfer at death, state or federal, may be increased by the ownership by deceased of tax exempt securities. *Plummer* v. *Coler, supra; Knowlton* v. *Moore,* 178 U. S. 41; *Greiner* v. *Lewellyn, supra; Blodgett* v. *Silberman, supra.* Notwithstanding *Macallen* v. *Massachusetts,* 279 U. S. 620, I do not understand that tax exempt securities of a corporation, or the income from them, may under no circumstances enter into the computation of a corporate franchise tax and increase it proportionately, or that a broker or dealer in securities may not be taxed on his profits from the purchase and sale of government and state securities. Compare *Peck & Co.* v. *Lowe,* 247 U. S. 165; *Barclay & Co.* v. *Edwards,* 267 U. S. 442. In *National Leather Company* v. *Massachusetts, supra,* an increase of property outside the taxing state might increase the tax on net assets within the state. For like reasons it would seem that the tax-free securities might rightly enter into the computation of net worth since they are liable for debts and so contribute to net worth, and that the net worth thus computed should be held subject to the state tax except insofar as tax exempt securities contribute to it.

Second, in the present case, it is difficult to see in what respect the mere ownership of the appellant's tax-free securities has been resorted to in order to increase taxable net values. That conclusion does not follow from the fact that the state court in its second opinion found a larger taxable value upon a different interpretation of the statute than in its first. It could be true only if, by the consistent application of the rule finally laid down, the shifting of some of the taxpayer's investments from taxable to exempt securities would result in an increase of

the tax. But such is not the effect of the statute, for if the taxpayer who owns no exempt property may be taxed on his full net worth, but is taxed only half as much if he converts one-half of his gross assets into tax exempt bonds, it would seem that ownership of the latter had resulted in a decrease and not an increase of taxable values and that the burden of the tax is diminished with mathematical exactness in the proportion that the taxpayer has chosen to invest in tax exempt securities.

Invoking the rule now laid down, a taxpayer having no tax exempt securities and legitimately bearing the burden of a state tax on net worth may put off the burden completely by the simple expedient of purchasing, on credit, government bonds equal in value to his net taxable assets. The success of a device so transparently destructive of the taxing power of the state may well raise doubts of the correctness of the constitutional principle supposed to sustain it. So construed, the Constitution does more than protect the ownership of government bonds from the burdens of taxation. It confers upon that ownership an affirmative benefit at the expense of the taxing power of the state, by relieving the owner from the full burden of taxation on net worth to which his taxable assets have in some measure contributed.

But it is no less our duty to recognize and protect the powers reserved to the state under the Constitution than the immunities granted to the federal government. *South Carolina* v. *United States, supra.* The right of the state to tax net worth, so far as it is attributable to taxable assets, and that of the national government to insist upon its exemption so far as tax-free property enters into its computation, stand on an equal footing. There is nothing in the Constitution nor in the decisions of this Court to justify a taxpayer in demanding that the one should be sacrificed to the other, or which would

support the national government in saying to the state that in ascertaining taxable net worth debts must be deducted from taxable assets alone, any more than it would support the state in insisting that debts should be deducted exclusively from the taxpayer's government bonds in ascertaining taxable net worth.

Nothing said by this Court in *National Life Insurance Co.* v. *United States,* 277 U. S. 508, decided one week later than the *National Leather Company* case, *supra,* should lead to a reversal of the judgment below. In that case an Act of Congress taxing the income of insurance companies granted an exemption of 4% of their reserve. By the terms of the statute the benefit of the exemption was withheld to the extent that the taxpayer received income from tax exempt securities. The statute regulated only the exercise of the power of the national government to tax. Neither it nor the decision of the court affected the taxing power of a state. The statute was assailed solely on the ground that it discriminated against the holder of tax exempt securities merely because they were tax-exempt, to the extent that the statutory exemption was withheld from the holder of government, state and municipal bonds. The effect of this discrimination was that if the taxpayer shifted investments from its taxable to its tax exempt list its tax remained undiminished until the income from the tax-free list equalled the statutory exemption.

After pointing out that the collector in applying the statute had diminished the statutory exemption by the amount of interest received from tax exempt securities, the court said, p. 519: "Thus he [the tax collector] required petitioner to pay more upon its taxable income than could have been demanded had this been derived solely from taxable securities. If permitted, this would destroy the guaranteed exemption. One may not be

subjected to greater burdens upon his taxable property solely because he owns some that is free."

But the present statute has no such effect. Calling the deduction of policy liabilities, required for the computation of the tax, an " exemption " and saying that ownership of tax exempt securities is made the basis of denying the " full exemption," may give this case a verbal resemblance to that, but it does no more. True, a change by appellant from taxable to tax free investments would result in a smaller deduction from its taxable assets, but it would also result in a proportionate reduction of its taxable assets with a corresponding decrease in taxable values, always in exact proportion to appellant's investment in tax exempt securities.

Only if the taxpayer were the fortunate recipient of a gift of tax exempt securities could the net worth of its taxable securities be increased and this not solely or at all because its newly acquired securities are " free," but because they, like its taxable assets, may be used to meet policy obligations, and thus proportionately relieve taxable assets from that burden. Similarly, a gift by way of payment of policy obligations or reinsurance would increase the tax although it would not increase taxable assets. So the increase, by gift, of property outside the state would increase the tax upon net assets within the state. The property outside the state is not subject to a tax, but it must pay its share of the debts. But in every case, as in the present, the tax assessed would correspond with mathematical exactness to the contributions made by the taxable assets to the total net worth. Hence, the question here is not whether the taxpayer has been discriminated against because he owns government bonds, but only whether the privilege which the state recognizes as attaching to their ownership is sufficiently great.

If the constitutional inhibition is not directed against the imposition of burdens, but affirmatively compels the

annexation of such benefits to the ownership of government bonds as will increase their currency and stimulate the market for them, even though those privileges are extended at the expense of the constitutional powers of the states, it is difficult to see what the limits of such a doctrine may be. I suppose that the sale and market value of government bonds would be materially increased if we were to say that the Constitution *sub silentio* had forbidden their seizure for debts, or rendered their possessor immune from the various forms of state taxation to which this Court has said he is subject. But however desirable such a consequence might·be thought to be, that could hardly be taken as a sufficient ground for saying it.

I think the judgment should be affirmed.

MR. JUSTICE HOLMES and MR. JUSTICE BRANDEIS concur in this opinion.