**FEDERAL PRODUCTS CORP.**

v.

**John H. NORBERG.**

No. 79-52-M.P.

Supreme Court of Rhode Island.

May 6, 1981.

Edwards & Angell, David K. Duffell, Gail E. McCann, Philip B. Barr, Jr., Providence, for petitioner.

Dennis J. Roberts, II, Atty. Gen., Perry Shatkin, Chief Legal Officer (Taxation), Providence, for respondent.

OPINION

KELLEHER, Justice.

This is a statutory petition for certiorari sought by Federal Products Corp. (the taxpayer) pursuant to the relevant provisions of the Administrative Procedures Act, G.L. 1956 (1977 Reenactment) § 42–35–16. The taxpayer seeks a review of an order entered in the District Court after a justice of that court had upheld the Tax Administrator's (the administrator) assessment of a deficiency assessment against Federal Products Corp. for the years 1965–68. The deficiency arose, in part, from the inclusion of interest derived from, and the proceeds from a sale of, tax-exempt United States government obligations in the allocation formula used to measure the amount of the taxpayer's net income subject to tax by the State of Rhode Island. General Laws 1956 (1980 Reenactment) § 44–11–14(2). The taxpayer contends that the imposition of this additional tax violates various federal constitutional and statutory mandates.

This controversy was presented to the trial court on an agreed statement of facts which may be summarized as follows. Federal Products Corp., a Rhode Island corporation, manufactures and sells precision instruments. During the years in question, the taxpayer had invested a substantial portion of its cash in common stock and in U.S. Treasury notes and bonds. During the years 1965–68, the stock, notes, and bonds were sold and the proceeds were used to defray the cost of construction of the taxpayer's new plant.

The taxpayer was assessed with a deficiency in its Rhode Island Business Corporation Tax by the administrator for the years

1965–68. The total amount of the deficiency was $23,519.56. Approximately half of this amount ($11,646.35) resulted from the administrator's inclusion of the entire proceeds of the sale of the federal securities and the interest derived from these securities as "gross receipts" in his computation of the Business Corporation Tax.

The taxpayer received the deficiency determination on February 1, 1973, and paid the deficiency under protest on February 15, 1973. Thereafter, the taxpayer requested and was granted a hearing before the administrator. General Laws 1956 (1977 Reenactment) § 42–35–15. The administrator affirmed the deficiency determination on August 15, 1977. On September 13, 1977, the taxpayer filed a complaint in the District Court. A justice of that court affirmed the administrator's ruling on January 18, 1979, and a judgment was entered the following day.

The decisive issue is whether the administrator may, in light of the United States Constitution and the relevant federal statutes, include as "gross receipts" within G.L. 1956 (1970 Reenactment) § 44–11–14(2), the interest derived from, and the proceeds gained from the sale of, the aforementioned government securities. We conclude that he may not.

The administrator, in assessing the tax presently in controversy, relied on the allocation of the in-state and out-of-state income[1] provisions of G.L. 1956 (1970 Reenactment) § 44–11–14(2)(E) which classify as taxable the taxpayer's total gross receipts, specifically, "all other business receipts earned within the state." The administrator's rationale for taxing the federal securities and their accrued income is as follows. Although Federal Products Corp. was mainly a manufacturer of precision instruments, one of its corporate purposes was to own the plant in which it operated. The company made a business judgment to expand plant facilities and invested money to finance this expansion. Some of the expansion fund was the interest and proceeds from the sale of the federal securities. The adminstrator contends that, having in mind the purpose for the taxpayer's acquisition of the federal obligations, the cash generated by these securities became "business receipts." He supports this rationale by pointing out that the proceeds and the interest derived from these obligations were not included in the total taxable income but were merely used to measure the amount of the net income subject to tax.

The difficulty with the administrator's approach is that he has attempted to do indirectly that which he could not do directly, to wit, levy a tax on tax-exempt federal securities. Such a tax is expressly prohibited by Title 31 U.S.C.A. § 742 (1976):

"Exemption from taxation

Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, *directly or indirectly*, in the computation of the tax, except nondiscriminatory franchise or other non-property taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." (Emphasis added.)

Title 31 U.S.C.A. § 742 is a codification of the principle enunciated in previous United States Supreme Court opinions that prohibited the taxation of federal obligations. This was explained by Mr. Justice Harlan in *Society For Savings In The City Of Cleveland v. Bowers*, 349 U.S. 143, 75 S.Ct. 607, 99 L.Ed. 950 (1955):

"In 1829 this Court decided in *Weston v. City Council of Charleston*, 27 U.S. 449, 2 Pet. 449, 7 L.Ed. 481, that obligations of the Federal Government are immune from state taxation. This rule, aimed at protecting the borrowing power of the United States from state encroachment,

---

1. During the years 1965–68, 98 percent of Federal Products Corp.'s sales were to purchasers located outside of Rhode Island.

was derived from the 'Borrowing' and 'Supremacy' Clauses of the Constitution, and the constitutional doctrines announced in *McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 4 L.Ed. 579. It was subsequently embodied in a succession of federal statutes, the existing statute being * * * 31 U.S.C. § 742. The rule has been carried forward to embrace indirect taxation of such obligations through their inclusion in a tax imposed on all the property of a taxpayer."[2] *Id.* at 144, 75 S.Ct. at 608, 99 L.Ed. at 955. (footnote omitted)

The policy underlying the above-mentioned evolution of the law was stated clearly by Mr. Justice Butler in *Missouri v. Gehner*, 281 U.S. 313, 320–21, 50 S.Ct. 326, 327–28, 74 L.Ed. 870, 876 (1930):

"It is elementary that the bonds or other securities of the United States may not be taxed by state authority. That immunity always has been deemed an attribute of national supremacy and essential to its maintenance. The power of Congress to borrow money on the credit of the United States would be burdened and might be destroyed by state taxation of the means employed for that purpose."

The fact that the administrator did not *directly* tax the proceeds and interest from the U.S. Treasury notes and bonds and common stock is not determinative, for it is clear that 31 U.S.C.A. § 742 prohibits an *indirect* tax on such items. Although the administrator contends that he included the proceeds from the sale of the federal obligations and the interest merely as a measure to determine the corporate income tax due Rhode Island, he somehow overlooks the fact that the amount of the tax assessed was increased by more than $11,000 by the inclusion of the tax-exempt obligations in the measure of the tax. The only reasonable conclusion to draw is that this was an

indirect tax upon federal securities and, thus, invalid. The language of *The Macallen Co. v. Massachusetts*, 279 U.S. 620, 629, 49 S.Ct. 432, 435, 73 L.Ed. 874, 880 (1929), supports this conclusion:

"The fact that a tax ostensibly laid upon a taxable subject is to be measured by the value of a nontaxable subject at once suggests the probability that it was the latter rather than the former that the lawmaker sought to reach. If inquiry discloses persuasive grounds for the conclusion that such is the real purpose and effect of the legislation, the tax cannot be upheld without subverting the well-established rule that '. . . what cannot be done directly because of constitutional restriction cannot be accomplished indirectly by legislation which accomplishes the same result . . . constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation.' *Fairbank v. United States*, 181 U.S. 283, 294, 300, 21 S.Ct. 648, 652, 655, 45 L.Ed. 862."

Title 31 U.S.C.A. § 742 contains an exception to the general rule that a state may not tax the obligations of the federal government, directly or indirectly. This exception is that a state may exact a nondiscriminatory franchise tax for the privilege of doing business within that state. 31 U.S.C.A. § 742 (1976); *Educational Films Corporation of America v. Ward*, 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400 (1931); see *New Jersey Realty Title Insurance Co. v. Division of Tax Appeals*, 338 U.S. 665, 674 n.6, 70 S.Ct. 413, 418 n.6, 94 L.Ed. 439, 446 n.6 (1950). It is clear, however, that the tax in the case at bar was not a franchise tax. The tax was instead levied pursuant to G.L.

---

2. At one time, Rhode Island had a statute dealing with this subject.

See *Rhode Island Hospital Trust Co. v. Armington*, 21 R.I. 33, 41 A. 570 (1898); G.L. 1896, ch. 44, § 2. General Laws 1896, ch. 44, § 2, expressly exempted from taxation "the bonds and other securities issued and exempted from tax-

ation by the government of the United States." Such a state statutory exemption is now superfluous since it is clear that federal obligations are beyond the taxing power of the state. *First Federal Savings and Loan Association of Providence v. Langton*, 105 R.I. 236, 239–40, 251 A.2d 170, 172 (1969).

450

1956 (1970 Reenactment) § 44–11–14(2), the Business Corporation Tax, and not pursuant to G.L. 1956 (1980 Reenactment) § 44–12–1, the Corporate Franchise Tax. Thus, the franchise exception embodied within 31 U.S.C.A. § 742 is not relevant here.

Therefore, we find invalid that portion of the deficiency which is attributable to the inclusion of the tax-exempt federal securities in the allocation factor used to measure the tax.

The petition for certiorari is granted, the judgment entered in the District Court is quashed, and the papers certified to this court are to be returned to the District Court with our decision endorsed thereon.

SHEA, J., did not participate.