CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Plaintiffs-Appellees, *v.* DANIEL J. LENCKOS, Acting Director of the Illinois Department of Revenue *et al.*, Defendants-Appellants.

First District (1st Division)   No. 81—962

Opinion filed May 31, 1983.—Rehearing denied July 11, 1983.

Tyrone C. Fahner, Attorney General, and Lloyd B. Foster, of Illinois Department of Revenue, both of Chicago (John D. Whitenack, Special Assistant Attorney General, of counsel), for appellants.

Edward C. Rustigan and Martin G. Rosenstein, both of Mayer, Brown &

Platt, of Chicago, for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs, Continental Illinois National Bank and Trust Company of Chicago (hereinafter the bank), a corporation, and seven subsidiary corporations, Continental Illinois Corporation, Continental Illinois Leasing Corporation, Marina City Building Corporation, Cobak Corporation, Continental Illinois (Delaware) Limited, Continental Illinois Overseas Service Corporation, and Continental Illinois Service Corporation, brought this action seeking income tax refunds. The taxes were paid by the bank under protest pursuant to sections 1 through 2a.1 of "An Act in relation to the payment and disposition of moneys received by officers and employees of the State of Illinois by virtue of their office or employment" (Ill. Rev. Stat. 1977, ch. 127, pars. 170 through 172a) and held in a protest account pending the final disposition of the case. Defendants are the Department of Revenue of the State of Illinois, the Director of Revenue of the Department of Revenue of the State of Illinois, and the Treasurer of the State of Illinois. Defendants have appealed from the judgment entered in favor of plaintiffs on January 13, 1981, and the order of March 20, 1981, denying the motion for reconsideration of said judgment. The Multistate Tax Commission[1], with leave of court, was allowed to file an *amicus curiae* brief.

The issues presented for review are as follows: (1) Whether apportionment of multistate business income to Illinois shall include interest received on United States obligations, which interest is exempt from Illinois income tax, in applying the apportionment formula prescribed in section 304(c) of the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 3—304(c)); (2) Whether all amounts paid or accrued to the taxpayer as interest on State and municipal bonds during the taxable year to the extent excluded from (U.S.) gross income, must be included in Illinois income; and (3) Whether underpayment of estimated income taxes, without correction by the final assessment date, requires an underpayment penalty.

---

[1]The Multistate Tax Commission (the Commission) is the official administrative agency of the Multistate Tax Compact (the Compact) entered into currently by 19 States and the District of Columbia as full members, and by 11 States as associate members. See C. Bowsher, Comptroller General, "Report to the Chairman, House Committee on Ways and Means; Key Issues Affecting State Taxation of Multijurisdictional Corporate Income Need Resolving" (General Accounting Office, United States Government, 1982); *GTE Automatic Electric, Inc. v. Allphin* (1977), 68 Ill. 2d 326, 335, 369 N.E.2d 841, 845.

The trial court ruled that the following amounts were assessed wrongly and improperly and contrary to law:

TAXABLE YEAR

| Issue | 1973 | 1974 | 1975 |
|---|---|---|---|
| Apportionment (#1) | $12,175 | $22,714 | $60,694 |
| Amortization (#2) | 48,611 | 17,749 | 49,394 |
| Penalty (#3) | -- | -- | 48,132 |

and held that plaintiff was entitled to a credit for those monies paid under protest for the taxable year in question.

I

■ The first issue presents a question of first impression in Illinois and relates to whether under the provisions of article 3 of the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 3—301 *et seq.*) the numerator and denominator of the apportionment factor of plaintiff for the years 1973, 1974 and 1975 properly should include the amount of plaintiff's interest income for such years from United States government obligations, even though such interest income was exempt from the Illinois income tax.

*Apportionment Formula*

Whenever a corporation conducts business in more than one State, a question arises as to how much business income is earned in each of the States where business is transacted. Under the apportionment method, a one-, two-, or three- factor formula is commonly used to determine the percentage of a corporation's business actually conducted within the State. This percentage is multiplied by the corporation's total taxable business income (tax base) in order to determine the portion of taxable income earned within the State. (Ill. Rev. Stat. 1979, ch. 120, par. 3—304.) Apportionment does not increase or decrease the tax base (total taxable income); it determines what portion of that income was earned in each of the States in which a taxpayer transacts business. A corporation's tax base remains constant. "The purpose of the uniform act and article 3 of the Illinois act is to assure that 100%, and no more or no less, of the business income of a corporation doing multistate business is taxed by the States having jurisdiction to tax it." *GTE Automatic Electric, Inc. v. Allphin* (1977), 68 Ill. 2d 326, 335, 369 N.E.2d 841, 845.

In *Caterpillar Tractor Co. v. Lenckos* (1981), 84 Ill. 2d 102, 106-07, 417 N.E.2d 1343, 1346, the supreme court stated:

"Under section 304(a), the Director of Revenue (Director) applies a three-factor (sales, payroll and property) apportionment formula which separately compares the total value of a corporation's in-State and out-of-State sales, payroll, and property, both tangible and intangible, with the total value of the corporation's in-State sales, payroll, and property alone. To illustrate: if the total multistate sales of a corporation are $10 million and its total Illinois sales are $1 million, the Illinois sales would represent one-tenth of the total multistate sales of the corporation, giving a sales factor of 10%. Once the percentage of the other factors, payroll and property, is calculated, the three factors are averaged. This average is then multiplied by the total amount of business income generated by the corporation's in-State and out-of-State operations. If, for example, the sales, payroll and property multistate factors of the corporation are each 10% and its combined business income is $20 million, the amount of business income attributable to Illinois is $2 million."

Article 3 of the Illinois Income Tax Act, which provides for the three-factor formula for the allocation and apportionment of the income of a corporation doing multistate business, contains the language of the Uniform Division of Income for Tax Purposes Act (*GTE Automatic Electric, Inc. v. Allphin* (1977), 68 Ill. 2d 326, 369 N.E.2d 841), and the customary three-factor formula is utilized by most States to measure in-State business activity as follows:

$$\frac{\text{In-State Property}}{\text{Everywhere Property}} + \frac{\text{In-State Payroll}}{\text{Everywhere Payroll}} + \frac{\text{In-State Sales}}{\text{Everywhere Sales}}$$

equals Percentage of business activity conducted In-State

Section 304(c) provides as follows:

"Business income of a financial organization shall be apportioned to this State by multiplying such income by a fraction, the numerator of which is its business income from sources within this State, and the denominator of which is its business income for all sources. For the purposes of this subsection, the

business income of a financial organization from sources within this State is the sum of:

\* \* \*

(3) Interest and dividends received within this State." Ill. Rev. Stat. 1977, ch. 120, par. 3—304(c).

However, in Illinois the General Assembly chose to use a one factor formula measuring the business activity of banks, as follows:

| Illinois Gross Receipts | equals | Percentage of business Activity conducted |
| --- | --- | --- |
| Gross Receipts From Everywhere | | in Illinois |

During the taxable years here involved the bank received in Illinois the following amounts as interest on obligations of the United States government.

| Year | Amount |
| --- | --- |
| 1973 | $43,145,641 |
| 1974 | 62,176,825 |
| 1975 | 54,679,968 |

The Director of Revenue concedes that such amounts of interest were exempt from the Illinois income tax. (See *Willcuts v. Bunn* (1931), 282 U.S. 216, 75 L. Ed. 304, 51 S. Ct. 125.) The issue before this court is whether such interest, which is wholly exempt from Illinois income tax, may be taken into account in applying the one factor apportionment formula.

The Director argues that Illinois uses a one-factor apportionment formula to determine the amount of a financial organization's income which is subject to tax in Illinois and that the statute requires all interest received to be included in the measure of business activity. Interest received within this State is included in the numerator of the one-factor formula and the denominator includes interest from all sources. The language of the statute is clear and unambiguous and it is not in need of interpretation. The statute clearly provides that these sums must be included in the numerator and denominator of the apportionment formula.

The Director claims that the Department of Revenue is not seeking to tax interest as such which is exempt. If the intent of the statute was to exclude tax-exempt interest from the apportionment formula, the statute could have been limited to taxable interest received

in this State, or the statute could have allowed a deduction for tax-exempt interest similar to the deduction in section 203(b)(2) of the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 2—203(b)(2)). The statute is not so limited in either of these ways.

The bank has countered with the observation that "there is no specific reference in the Act to the fact that interest on United States obligations is exempt from the Illinois income tax." The bank argues that section 203(b)(2)(H) of the Act simply exempts "all amounts *** which are exempt from taxation by this State either by reason of its Constitution or by reason of the Constitution, treaties or statutes of the United States." (Ill. Rev. Stat. 1977, ch. 120, par. 2—203(b)(2)(H).) The exemption from Illinois income taxation of interest on United States obligations is derived not from the Illinois Income Tax Act but from Federal law and the United States Constitution. Since there is no specific reference anywhere in the Act to such tax-exempt interest, it can hardly be expected that the General Assembly would have thought it necessary specifically to exclude such tax-exempt interest from the section 304(c) apportionment formula. Accordingly, the failure of the section 304(c) definition specifically to exclude tax-exempt interest on United States obligations does not provide a basis for the Department's contention that such interest was meant to be included.

In examining the legislative intent the bank asserts that interest on United States obligations is wholly exempt from Illinois income tax and also barred under Federal law. (31 U.S.C. sec. 742 (1959); *Miller v. City of Milwaukee* (1927), 272 U.S. 713, 71 L. Ed. 487, 47 S. Ct. 280.) Section 742 provides as follows:

"Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes." 31 U.S.C. sec. 742 (1959).

The bank also asserts that such transactions are exempt and the Department's interpretation of the Illinois Income Tax Act contravenes the supremacy clause of the United States Constitution (U.S. Const., art. VI) and article I, section 8, which provides Congress with the power "[t]o borrow Money on the credit of the United

States." U.S. Const., art. I, sec. 8.

We gather from the bank's argument that the application of the apportionment formula under section 304(c) results in a direct or indirect tax on exempt interest which is prohibited. Under this argument each item or transaction is identified and excluded from the in-State overall business activity for State income tax purposes.

In this connection, the Multistate Tax Commission in support of the Department has argued that unlike Illinois, most States do not have a special apportionment formula for banks. The customary three-factor formula, property, payroll and sales is utilized, to measure in-State business activity. If a bank, such as Continental, has a staff of personnel whose duties include acquiring, managing and profitably disposing of United States securities, it follows that their payroll, offices, desks, telephones and sales will be fully reflected in the property, payroll and sales apportionment formula. Should this staff of personnel work only in Illinois, none of the three-factor formula States can apportion in those States any of the Illinois property, payroll or sales connected with the business activity relating to the securities. Then, if Illinois is also prevented from including any measure of such business activity by the bank, the bank would escape all measurement of that business activity contrary to the holding in *GTE Automatic Electric, Inc. v. Allphin* (1977), 68 Ill. 2d 326, 369 N.E.2d 841.

We are not persuaded that the cases cited by the bank (*Missouri v. Gehner* (1930), 281 U.S. 313, 74 L. Ed. 870, 50 S. Ct. 326; *Miller v. City of Milwaukee* (1927), 272 U.S. 713, 71 L. Ed. 487, 47 S. Ct. 280; *Gibbons v. Ogden* (1824), 22 U.S. (9 Wheat.) 1, 6 L. Ed. 23), support the position that through the use of the apportionment formula that the same results in a direct tax or indirect tax on particular items of income. Rather, the factors that are included in the apportionment formula need not be attributable to particular transactions or activities associated with the bank's business. When an item of income or transaction is included in the apportionment formula the item of income is no longer identifiable as a separate item or entity, but is intended to and does become a part of the completed computation of the entire in-State business income. Thereafter, the total formula is properly a reflection and measure of the overall in-State business activity in the State, and we do not view this application of the formula as a tax on a particular transaction.

■ We may have been inclined to accept the arguments of the Department and the Multistate Tax Commission except for an additional authority brought to our attention by the bank, after oral ar-

guments had been completed. In *Federal Products Corp. v. Norberg* (1981), \_\_\_ R.I. \_\_\_, 429 A.2d 447, the taxpayer corporation had invested a substantial portion of its cash in common stock and in United States Treasury notes and bonds. Later the notes and bonds were sold and the taxpayer was assessed with a deficiency based upon the tax administrator's inclusion of the proceeds and the interest derived from these securities as "gross receipts" in the computation of the Business Corporation Tax. The tax administrator pointed out "that the proceeds and the interest derived from these obligations were not included in the total taxable income but were merely used to measure the amount of the net income subject to tax." (\_\_\_ R.I. \_\_\_, \_\_\_, 429 A.2d 447, 448.) On appeal, the Rhode Island Supreme Court stated:

> "The fact that the administrator did not *directly* tax the proceeds and interest from the U.S. Treasury notes and bonds and common stock is not determinative, for it is clear that 31 U.S.C.A. [8] 742 prohibits an *indirect* tax on such items. Although the administrator contends that he included the proceeds from the sale of the federal obligations and the interest merely as a measure to determine the corporate income tax due Rhode Island, he somehow overlooks the fact that the amount of the tax assessed was increased by more than $11,000 by the inclusion of the tax-exempt obligations in the measure of the tax. The only reasonable conclusion to draw is that this was an indirect tax upon federal securities and, thus, invalid." (\_\_\_ R.I. \_\_\_, \_\_\_, 429 A.2d 447, 449.)

(See also *First Federal Savings & Loan Association v. Department of Revenue* (1982), \_\_\_ Mont. \_\_\_, 654 P.2d 496.) The *Federal Products Corp.* case involves the precise issue involved herein, and we perceive no reason to depart from its reasoning and holding. (See Comment, *Federal Immunity from State Taxation: A reassessment*, 45 U. Chi. L. Rev. 695 (1978).) We agree with the argument that there has been a substantial erosion in the *per se* prohibition or absolute immunity of the Federal immunity doctrine from *McCulloch v. Maryland* (1819), 17 U.S. (4 Wheat.) 316, 4 L. Ed. 579; see also *Washington v. United States* (1983), 460 U.S. \_\_\_, 75 L. Ed. 2d 264, 103 S. Ct. 1344, but such rejection should not be extended to the facts of the instant case where the subject of the tax is a natural and traditional source of Federal revenue. It follows that the action of the Department of Revenue was improper and the judgment of the trial court was correct as to the above issue.

## II

■■ The second issue also concerns an item of interest payments and the dispute relates to the treatment of premiums paid for State municipal bonds under the Illinois Income Tax Act. During each of the taxable years 1973, 1975 and 1976, the bank received interest on certain State and municipal bonds which was exempt from Federal taxation and the bank claims in computing its net income for Illinois income tax purposes, it added back to its Federal taxable income for the years in question only the true interest portion of each such payment. The bank's position is that a portion of each periodic receipt of interest on bonds will in fact represent merely a return of capital invested to acquire the bond and does not amount to an attempt to create a deduction. The bank maintains that what is involved is merely the obligation to construe the word "interest" that is susceptible to a proper construction as meaning true interest. As a result of this construction, the bank, in computing its net income for Illinois income tax purposes, excluded the amortized bond premium from the interest payments when computing its base income. Generally, for Illinois income tax purposes, the bank must include the interest to determine its base income. Ill. Rev. Stat. 1977, ch. 120, par. 2—203(b)(2)(A).

The bank insists that the position of the Department of Revenue in this dispute results in an unconstitutional discrimination in the administration of the Act in violation of the due process and equal protection clause of the fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV, sec. 1) and the due process and equal protection clause and the uniformity provisions of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 2; art. IX, sec.2).

In its brief the bank does not question that under the Act interest received on Federal exempt bonds is income which is taxable for Illinois' purposes. However, such interest was intended to be taxed in the same manner as interest on federally taxable bonds. The effect of the Department's position would be to tax federally exempt bonds purchased at a premium at a higher rate of Illinois income tax than bonds purchased at a premium which are not federally exempt.

The Department contends that the entire interest payment must be reported as interest income in accordance with section 203(b)(2)(A) of the Act (Ill. Rev. Stat. 1977, ch. 120, par. 2—203(b)(2)(A)), which provides:

> "An amount equal to all amounts paid or accrued to the taxpayer as interest during the taxable year to the extent ex-

cluded from gross income in the computation of taxable income [shall be added to Illinois income]."

Both parties admit that prior to the Revenue Act of 1942 there was no deduction under the Federal income tax law for amortizable bond premiums. "Whether or not the purchase price exceeded the face value of the bond, the holder considered the full price as the basis for capital gain or loss, and reported all taxable interest received as income." *Commissioner v. Korell* (1950), 339 U.S. 619, 621, 94 L. Ed. 1108, 1110, 70 S. Ct. 905, 906.

The Department claims that it is only because Congress authorized a deduction for the amortized bond premium charges that this item of expense is presently deductible. (26 U.S.C. sec. 171 (1976).) Thus, the amount of State and local bond interest exempted from Federal tax and excluded from Federal gross income is gross interest, not net. Where the legislature defines State and local bond interest as the amount of interest excluded from Federal gross income (see section 203(b)(2)(A)), it also meant gross State and local interest, not net. If the legislature had intended net State and local interest to be added to Illinois income, it would be net of all expenses, not just the premium expenses. No such legislative intent can be gathered from the language in the Act.

The bank has cited *Hanover Bank v. Commissioner* (1962), 369 U.S. 672, 8 L. Ed. 2d 187, 82 S. Ct. 1080, for the proposition that the actual income earned on a bond purchased at a premium is less than the amount of the interest payment received. *Commissioner v. Korell* (1950), 339 U.S. 619, 94 L. Ed. 1108, 70 S. Ct. 905, was also cited, suggesting that the view of the United States Treasury when the deduction for bond premium amortization was proposed in 1942, was that part of the interest on a bond purchased at a premium was a restoration of capital. The discussion of the legislative history in the *Korell* case did not suggest that Congress adopted this view, and it appears that the court did not decide whether the amortization of a bond premium represents a return of capital. However, an analysis of the language employed in *Old Colony R.R. Co. v. Commissioner of Internal Revenue* (1932), 284 U.S. 552, 560-61, 76 L. Ed. 484, 489, 52 S. Ct. 211, 213-14, suggests that it is not. The bank has offered other examples and arguments of discrimination in treatment involving bonds issued by private corporations and federally taxable bonds, but the facts of the instant case do not involve such bonds. That the two taxing statutes in question are not precisely identical does not deprive the bank of any constitutional right as claimed.

■■ The statutory language of section 203(b)(2)(A) of the Act should now be reviewed to determine the effects on the basic proposition asserted by the bank that bond premiums should be amortized and excluded in computing the amount of interest income from State and municipal bonds. The Department has cited *Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 410 N.E.2d 828, for the proposition that the General Assembly has not enacted or authorized any purported recognition or treatment or exclusion for periodic amortization of bond premiums on State, local and municipal bonds. The bank has responded and claimed that the Department misunderstands the Federal tax law and the bank's position. The bank maintains that section 171(a)(2) of the Internal Revenue Code does not permit a Federal deduction for amortizable bond premiums on State and municipal bonds, and the bank is not trying to create a new deduction for amortizable bond premiums under the Act. Instead, the legislature has already decided in section 203(b)(2)(A) to modify taxable income by adding thereto "all amounts paid or accrued to the taxpayer as interest *** to the extent excluded from gross income." The bank contends that the language of this modification must be construed in accordance with the legislative intent to impose a tax under the Act measured by the net income and not measured by a return of capital. Amortization of bond premiums is proper in computing the amount of interest.

One major obstacle to the bank approach is that the Illinois Income Tax Act, section 203(b)(2)(A), by its terms does not appear to offer support for the position urged. We do not perceive any reason to construe the word "interest" any differently than we have in other sections of the Act. In sum, the plain language of the Act strongly suggests that there is no such exclusion, treatment, or allowance as claimed. The plain language is controlling unless a different legislative intent is apparent from the purpose and history of the Act. (*Bodine Electric Co. v. Allphin* (1980), 81 Ill. 2d 502, 410 N.E.2d 828; *Mitchell v. Mahin* (1972), 51 Ill. 2d 452, 283 N.E.2d 465, *cert. denied* (1972), 409 U.S. 982, 34 L. Ed. 2d 245, 93 S. Ct. 317; *Thorpe v. Mahin* (1969), 43 Ill. 2d 36, 250 N.E.2d 633.) "The legislative intent should be sought primarily from the language used in the statute, and if such intent can be ascertained therefrom, it should prevail without resorting to other aids for construction." (*Louis A. Weiss Memorial Hospital v. Kroncke* (1957), 12 Ill. 2d 98, 105, 145 N.E.2d 71, 74.) Under the plain meaning of the Act there is a complete lack of authority to permit the bank to restructure the transactions to make the disputed premium appear as a return of capital as

separate accounting items. (See *Old Colony R.R. Co. v. Commissioner.*) There is no basis in the record or statute to support the view or concept urged by the bank.                                       •

Both parties have called our attention to *Moline National Bank v. Department of Revenue* (1983), 111 Ill. App. 3d 1086, 444 N.E.2d 1164. This recent case holds that the taxpayer may exclude an amortized municipal or State bond premium from base income and that "[t]he amortized premium does not represent income or interest. It is a return of capital." (111 Ill. App. 3d 1086, 1088; 444 N.E.2d 1164, 1166.) In its opinion the court also stressed the application of generally accepted principles of accounting and standard accounting practices as controlling. We have given detailed thought and consideration to this opinion, and we are compelled to respectfully differ and to reaffirm our views as expressed herein.

We do not perceive that the issue in this case is controlled by generally accepted principles of accounting or standard accounting practices or whether the parties may use said principles of accounting to abrogate the clear intention of the statute. It appears that a taxpayer is free to treat and adopt any method of accounting that is not contrary to law, but under the facts of this case said treatment or method of accounting to reflect a return of capital is not binding on the Department of Revenue. If the taxpayer feels that there is an inequity in the statute, the matter should be addressed to the attention of the legislature. It follows that the trial court erred in entering judgment for the plaintiffs on this issue.

### III

■ The final issue relates to sections 801 through 803 of the Illinois Income Tax Act requiring taxpayers to declare and pay estimated tax in four equal installments. (Ill. Rev. Stat. 1977, ch. 120, pars. 8—801 through 8—803.) Section 804 of the Act imposes a penalty on taxpayers who fail to pay (or who underpay) any such quarterly installment. (Ill. Rev. Stat. 1977, ch. 120, par. 8—804.) The bank paid $300,000 as its installment of estimated Illinois income tax for the first quarter of 1975, or one fourth of the $1,200,000 which the bank estimated would be its total 1975 Illinois income tax liability. The estimate was based on the amount the bank believed would be its 1974 liability. A return subsequently filed by the bank for 1974 showed an Illinois income tax liability for 1974 of $1,263,100. An amended return for 1974 indicated a tax liability of $1,149,387.

The Department has claimed that when the 1974 figure of

$1,263,100 was filed by the bank on the last day for filing, it became assessed, that is, locked in under Illinois for all future computation purposes. (Ill. Rev. Stat. 1977, ch. 120, par. 9—903.) The bank has not brought itself within any of the exceptions in section 804(d) (Ill. Rev. Stat. 1977 ch. 120, par. 8—804(d)), and the underpayment penalty was proper.

The bank has in effect argued that the filing of an amended return relates back to the filing of the original estimated quarterly return for purposes of avoiding the underpayment penalty. The bank has not cited any authority for this novel concept, and we reject said effort to avoid the clear and unambiguous language of the statute. Therefore, it follows that the statute is controlling and the action of the Department was proper.

The judgment of the circuit is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded.

McGLOON and O'CONNOR, JJ., concur.