638 P.2d 228

CONTINENTAL BANK, an Arizona corporation, Plaintiff-Appellee,

v.

ARIZONA DEPARTMENT OF REVENUE, an Administrative Agency of the State of Arizona, Defendant-Appellant.

No. 1 CA–CIV 4801.

Court of Appeals of Arizona, Division 1, Department A.

Oct. 6, 1981.

Rehearing Denied Nov. 18, 1981.

Review Denied Dec. 15, 1981.

Robert K. Corbin, Atty. Gen. by Frank L. Migray, Asst. Atty. Gen., Phoenix, for defendant-appellant.

Jennings, Strouss & Salmon by K. Thomas Finke and K. Layne Morrill, Phoenix, for plaintiff-appellee.

## OPINION

FROEB, Judge.

Continental Bank filed claims with the Arizona Department of Revenue for tax refunds in the years 1974 and 1975. Both claims were denied by the Department and Continental timely protested to the Arizona State Board of Tax Appeals. The Board sustained the Department's position as to each claim for refund. Continental then filed civil actions for each taxable year in the superior court, which were consolidated. Both parties filed motions for summary judgment. Continental's motion was granted and the Department's motion was denied. The Department appeals from that ruling.

Continental Bank is an Arizona corporation conducting a banking business in Arizona. In the ordinary course of its banking business, Continental obtains funds from depositors to whom it pays interest, and makes loans to borrowers to whom it charges interest. Continental's largest single expense item is the interest it pays to depositors for the use of the funds with which to conduct its banking business. As a part of this business, it purchases and holds the debt instruments of various units of the federal, state, and local government.

Continental challenges two state tax provisions. The first involves A.R.S. §§ 43–123.04 and 43–126(a)(5).[1] These statutes deal with deductions attributable to tax-exempt income. During the two years in question, 1974 and 1975, Continental had certain tax-exempt income consisting of interest from Arizona municipal bonds and interest on obligations of the United States. The major portion of the tax-exempt interest income was from Arizona municipal obligations. Only a minor portion of such income was from United States obligations. Continental also incurred certain interest expenses in connection with its normal banking operations. In accordance with the Department's interpretation of A.R.S. § 43–126(a)(5), Continental excluded from its otherwise allowable deductions the amount of $638,942.84 on its 1974 income tax return, and the amount of $513,717.47 on its 1975 income tax return. It then filed a claim for refund of $27,017.49 for 1974 and $53,940.29 for 1975.

The second statute challenged by Continental is A.R.S. § 43–123.21(E)(2). This provision adds tax-exempt income to gross income when computing a net operating loss (NOL) and has the effect of reducing or extinguishing an NOL which is carried forward and used as a deduction in computing future net income. A.R.S. § 43–123.21.

The Department of Revenue raises the following questions on its appeal from the judgment in favor of Continental Bank:

(1) Whether interest expense must be "connected with" tax-exempt interest before the disallowance formula of A.R.S. § 43–126(a)(5) can be applied.

(2) If such expense need not be "connected with" tax-exempt interest, whether A.R.S. § 43–126(a)(5) is constitutional.

1. Unless otherwise noted, all statutory citations refer to those existing in 1974–75. There have been changes since.

(3) Whether A.R.S. § 43–123.21, which disallows an otherwise available net operating loss deduction to taxpayers who own tax-exempt securities, is constitutional.

## ALLOCATION OF DEDUCTIONS TO TAX–EXEMPT INCOME

■ The first issue to be discussed is whether a connection must exist between a deduction and exempt income before the deduction is disallowed. There are three statutes involved in this issue. Two of the statutes disallow the interest deduction. A.R.S. § 43–123.03(C) is the general deduction disallowance section and states:

The deductions permitted by subsection A of this section *shall not be allowed to the extent that they are connected with the production of income not taxable under this title.* Proper apportionment and allocation of such deductions with respect to taxable and nontaxable income shall be determined pursuant to § 43–126, subsection (a), paragraph (5). (emphasis added)

A.R.S. § 43–123.04 is the specific section dealing with interest deductions:

In computing net income there shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness of the taxpayer. *However, no deduction shall be allowed to the extent that it is connected with income not taxable under this title.* The proper apportionment and allocation of the deduction with respect to taxable and nontaxable income shall be determined under rules and regulations prescribed by the tax commission. (emphasis added)

The third section, A.R.S. § 43–126(a)(5), sets forth the formula for determining the amount which is nondeductible:

In computing net income no deduction shall in any case be allowed in respect of:

. . . .

(5) Any amount otherwise allowable as a deduction which is allocable to one or more classes or [*sic*: of] income (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this title. In determining this nondeductible amount, the taxpayer shall divide tax exempt interest as defined in § 43–112, subsection (b), paragraph (10) by gross income as defined in section 43–112 plus tax exempt income as defined in § 43–112, subsection (b), paragraph (10), and multiply that figure by the interest deduction which is otherwise allowed pursuant to § 43–123.04. In addition, the taxpayer shall add ten per cent of the tax exempt income as defined in § 43–112, subsection (b), paragraph (10) which represents nondeductible administrative expenses related to the production of tax exempt income.

■ The Department contends that there need not be any direct connection between interest expense incurred and exempt income before the formula in A.R.S. § 43–126(a)(5) is applied; only a temporal connection need exist. In other words, anytime interest expense and tax-exempt income exist during the same tax year, the formula should be applied. Continental contends, however, that the existence of a direct connection between the deduction and exempt income is a prerequisite to applying the formula. We agree with Continental in this two-step construction. The Department's interpretation ignores the plain language of the statutes involved. In both of the deduction disallowance sections, the language clearly states that a deduction is disallowed only if it is "connected with" the tax-exempt income. To follow the Department's interpretation would be to render these disallowance sections meaningless. Statutes should be interpreted, whenever possible, so that no clause, sentence, or word is rendered superfluous, void, contradictory, or insignificant. *State v. Deddens,* 112 Ariz. 425, 542 P.2d 1124 (1975).

Thus, a *connection* between tax-exempt income and interest deductions must first be found. Once this connection is established, total interest deduction is multiplied by the percentage obtained by using the

formula in § 43–126(a)(5). The resulting figure is the interest deduction disallowed.[2]

This interpretation is supported by administrative and legislative background. Prior to 1973, the "connected with" language of the tax statutes was interpreted by the Department and its predecessors as disallowing interest deductions only where the indebtedness was "incurred or continued to purchase or carry" tax-exempt securities. A.C.R.R. R15–2–123.04–1(a). When, in 1973, the legislature repealed § 43–123 and replaced it with §§ 43–123.03 to 43–123.35, former § 43–123(a)(3) (after the 1973 amendments, § 43–123.03(C)) was reenacted containing the "connected with" language. This is likewise true with § 43–123(b) (after the 1973 amendments, § 43–123.04).[3] Moreover, in 1973, the legislature also reenacted the net operating loss provision (§ 43–123.21(E)(2)) and referred to the "connected with" language as "relating to interest on indebtedness incurred or continued to purchase or carry certain tax-exempt obligations." Then, in 1974, without modifying the "connected with" language of any of these sections, the legislature added the disallowance formula to § 43–126(a)(5). Aware of the long-standing administrative interpretation given to the "connected with" language, the legislature did not take the opportunity to alter it when the formula was added. We think this legislative inaction supports the interpretation we give to the taxing provisions in effect for the years 1974 and 1975.

In summary, we affirm the trial court and hold that for the tax years here involved a direct connection must be shown between deductions and exempt income before the formula in A.R.S. § 43–126(a)(5) is applied. If there is no direct connection, the deduction is allowed in full. We therefore do not reach the second issue raised by the Department involving the constitutionality of A.R.S. § 43–126(a)(5).

## REDUCTION OF NET OPERATING LOSS

The next issue involves the state and federal constitutionality of A.R.S. § 43–123.21(E)(2), the provision of the state tax law which denies pro tanto an otherwise allowable net operating loss carryover by reason of the receipt of tax-exempt income. This provision increases gross income by the amount of the exempt interest income for purposes of computing the net operating loss deduction in the succeeding year.[4] The trial court held that the provision violated art. I, § 8 and art. VI of the United States Constitution, 31 U.S.C. § 742, and art. 9, § 2 of the Constitution of Arizona. We agree. The effect of the provision is to unlawfully tax income otherwise exempt.

The Department initially argues that this issue was not raised during the administrative review process and was therefore not properly before the trial court. This is factually correct; however, we find the trial court properly considered the issue when raised for the first time in

---

2. There is a sliding scale effect to the formula in A.R.S. § 43–126(a)(5). When a taxpayer has taxable income in addition to tax-exempt income, the formula allows the taxpayer a partial deduction of interest expense even if it is connected with exempt income. The formula added by amendment in 1974 must therefore be seen as favoring the taxpayer when read against the background of the then existing concept of denying a deduction for *any* interest expense connected with exempt income. It is not for us to speculate why the legislature intended this result. The result must necessarily follow when the "connected with" language of A.R.S. §§ 43–123.03(C) and 43–123.04 was left unaltered at the time the formula was added.

3. Arizona's tax laws were again revised in 1978 with the Arizona Income Tax Act of 1978 (effective January 1, 1979).

4. It is not necessary to quote the lengthy provisions of A.R.S. § 43–123.21 providing for the allowance of a net operating loss carryover. Subparagraph (E)(2) of that section is the denial provision at issue here. It reads:

There shall be included in computing gross income the amount of interest received which is wholly exempt from the taxes imposed by this title, decreased by the amount of interest paid or accrued which is not allowed as a deduction by § 43–123.04, relating to interest on indebtedness incurred or continued to purchase or carry certain tax-exempt obligations;

the summary judgment proceedings. The NOL issue was secondary to other questions in the case; that is, relief on the NOL issue would only be necessary if Continental could successfully establish the deduction for interest expense earlier discussed in this opinion. It is this deduction which arguably gave rise to the NOL for 1974 which would be carried over to 1975. Since the deduction for interest expense was disallowed administratively, there was no occasion to reach the NOL issue. On appeal to the superior court, Continental in its complaint sought relief for the disallowance of the interest expense deduction and such further relief as was deemed appropriate by the court. The constitutionality of the NOL provision was thereafter raised in Continental's motion for summary judgment and ruled upon by the superior court. We hold the issue is now properly before us.

■ *United States Constitution.* In 1928, the United States Supreme Court in *National Life Insurance Co. v. United States,* 277 U.S. 508, 48 S.Ct. 591, 72 L.Ed. 968 (1928) expressed the principle, controlling here, that "[O]ne may not be subjected to greater burdens upon his taxable property solely because he owns some that is tax free." *Id.* at 519, 48 S.Ct. at 593. The provision in the federal income tax law which was struck down permitted insurance companies to exclude municipal bond interest from gross income but at the same time reduced a deduction otherwise available by the full amount of the exempt interest income which was excluded from gross income. The result was that an insurance company paid as much tax as it would have paid had the same total income been entirely from taxable sources. Thus, the company receiving partly exempt and partly taxable income would pay more tax per dollar on taxable gross income.

Drawing upon the principle stated in *National Life,* in 1930 the United States Su-

preme Court in *Missouri v. Gehner,* 281 U.S. 313, 50 S.Ct. 326, 74 L.Ed. 870 (1930) held a state statute unconstitutional which disallowed, in part, a deduction to an insurance company because it owned tax-exempt United States bonds. Although *National Life* involved the validity of a *federal* income tax law which attempted to tax *state* bond interest, *Gehner* involved a *state* law purporting to tax *federal* securities. Thus, Continental relies on *Gehner* for the proposition that the Arizona NOL provision is unconstitutional since a state may not make "the ownership of United States bonds ... the basis of denying the full exemption which is accorded to those who own no such bonds." *Id.* at 321–22, 50 S.Ct. at 328. The Department argues that *Gehner* has been repudiated.[5] The focus on the validity of *Gehner* is misplaced. It is not necessary to rely on *Gehner* for the proposition that a state statute may not tax federal securities. This prohibition is explicit in 31 U.S.C. § 742, which states:

> Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority. This exemption extends to every form of taxation that would require that either the obligations *or the interest thereon,* or both, be considered, *directly or indirectly,* in the computation of the tax, except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations and except estate taxes or inheritance taxes.

31 U.S.C. § 742 (emphasis added).

The relevant issue, then, is whether the Arizona NOL provision does in fact tax federal securities. The case of *United States v. Atlas Life Ins. Co.,* 381 U.S. 233, 85 S.Ct. 1379, 14 L.Ed.2d 358 (1965) provides guidance on this point. *Atlas* involved the constitutionality of federal statutes govern-

---

5. The principle stated in *National Life* was extended in *Gehner* to "condemn more than an increase in the tax rate on taxable dollars for those owning tax-exempt securities." *United States v. Atlas Life Ins. Co.,* 381 U.S. 233, 245, 85 S.Ct. 1379, 1386 (1965). This extension of

*National Life* was later repudiated in *Atlas. Id.* The repudiation of the extended rule of *National Life* is not material to the present case, however, because the situation here falls squarely within the prohibition as it was originally stated in *National Life.*

ing taxation of insurance companies. These statutes provided, in substance, that the investment income of an insurance company is to be split into two categories: that portion of income necessary to provide for future liabilities to policyholders is viewed as income of the policyholders, and the remaining income is viewed as being the income of the company itself. The insurance company is to pay taxes only upon this latter portion of its total income. The act required that pro rata portions of taxable and tax-exempt income be assigned to each category of income. The insurance company claimed that the implied exemption of state securities from federal taxation entitled the company to deduct from its taxable investment income that portion of tax-exempt interest which was allocated to the policyholders' reserve account and thus excluded from the company's taxable income. Further, the insurance company argued that by requiring that part of exempt income be assigned to the reserve account rather than assigning only taxable income, the act necessarily placed more taxable income in the company's share of investment return. This caused the company to pay more tax because a portion of its tax-exempt interest had to be allocated to the reserve account.

In upholding the Life Insurance Company Income Tax Act of 1959, the *Atlas* court distinguished the facts in *National Life.* The court noted that under the 1959 Act, a taxpayer receiving both tax-exempt and taxable income pays less tax than a taxpayer with an identical amount of only taxable income. Thus, unlike the case in *National Life,* as the taxpayer displaces taxable income with exempt income, the amount of

tax due is reduced; the tax liability per taxable dollar remains the same.

The net operating loss provision challenged here by Continental is subject to the same defect that existed in the provision struck down in *National Life.* Because the tax-exempt interest income is added to the gross income for purposes of computing the NOL deduction, all other things being equal, a taxpayer with part tax-exempt income and part taxable income would have the same NOL deduction in the succeeding year as a taxpayer with only taxable income. Thus, the taxpayer with part tax-exempt income and part taxable income is paying more tax per taxable dollar.[6] While the provision upheld in *Atlas* sought to prevent what in effect would be a double deduction where the company's tax-exempt reserve overlapped with its tax-exempt interest income, the NOL provision challenged here attempts to disallow any deduction for the tax-exempt interest income where total deductions allowed exceed gross income. This is contrary to the rule stated in *National Life.*

In light of this, we hold that A.R.S. § 43–123.21(E)(2), as it applied to federal securities, violates 31 U.S.C. § 742, enacted pursuant to the power of Congress under art. I, § 8 of the United States Constitution. Since federal statutes, by virtue of the supremacy clause, U.S.Const. art. VI, cl.2, control over inconsistent state legislation, the Arizona statute is unconstitutional.

■ *Arizona Constitution.* The final issue to be decided is whether Arizona's NOL provision violates the Arizona Constitution. The constitutional provision in question is art. 9, § 2, which states, in part, that "[p]ublic debts, as evidenced by the bonds

---

6. For example, A receives $10,000 of taxable income in year one, and has $15,000 in losses, resulting in a $5,000 NOL. A would receive a $5,000 NOL deduction in year two. B also has $10,000 of income in year one, one-half of which is tax-exempt interest income, and a $15,000 loss, resulting in a $10,000 NOL for year one. Pursuant to A.R.S. § 43–123.21, the $5,000 exempt income would be added to B's $5,000 gross income for purposes of computing the NOL deduction for year two. Thus, B has only a $5,000 NOL deduction in year two, the

same as A. Assume that in year two, both A and B receive $15,000 taxable income and no losses. After subtracting their $5,000 NOL deductions, both A and B would pay taxes on $10,000 in year two. Thus, for the two years combined, A and B will both pay the same amount of tax, even though A had a total of $10,000 of taxable income, and B had a total of only $5,000 taxable income. The end result is that B has paid more tax per taxable dollar than A.

of Arizona, its counties, municipalities, or other subdivisions, shall also be exempt from taxation."

The Department argues that this constitutional provision applies only to ad valorem or property taxes on bonds and does not constitutionally grant an exemption for the income from such bonds. For this proposition, the Department relies upon *City of Phoenix v. Bowles*, 65 Ariz. 315, 180 P.2d 222 (1947), and *City of Phoenix v. State ex rel Conway*, 53 Ariz. 28, 85 P.2d 56 (1938). These cases, however, involved excise taxes and did not involve the constitutional provision in question.

Continental Bank argues, on the other hand, that language specifically exempting public debt instruments from tax also requires exemption of the income therefrom. In support of this, Continental relies upon *Northwestern Mutual Life Insurance Co. v. Wisconsin*, 275 U.S. 136, 48 S.Ct. 55, 72 L.Ed. 202 (1927). At the time the *Northwestern* case arose, the federal statute exempting United States securities from state taxation was similar to Arizona's constitutional provision in that it did not specifically exempt income. The federal statute provided only that "obligations of the United States shall be exempt from taxation by or under state or municipal or local authority." U.S.Stat.Rev. § 3701. In finding the income from federal securities exempt, the Court held:

> [I]t has been the settled doctrine here that where the principal is absolutely immune, no valid tax can be laid upon income arising therefrom. To tax this would amount practically to laying a burden on the exempted principal.

275 U.S. at 140, 48 S.Ct. at 56.

■ We apply this analysis by the United States Supreme Court and hold that the income arising from state, municipal, and city bonds is exempted from taxation by art. 9, § 2 of the Arizona Constitution because the principal is immune therefrom.

The critical question, then, is whether the NOL provision in A.R.S. § 43–123.21(E)(2), adding tax-exempt income from state bonds to gross income for the purpose of comput-

ing NOL, violates art. 9, § 2 of the Arizona Constitution.

■ As stated earlier, the test applied by the United States Supreme Court in deciding whether a federal tax statute infringes on a federal or state security holder's tax-free income is whether its tax burden, the amount payable on taxable receipts, has increased because the taxpayer is the recipient of interest from the tax-free securities. *United States v. Atlas Life*. In determining whether the Arizona NOL provision infringes on the Arizona Constitution, the same standard should be applied. We hold that A.R.S. § 43–123.21(E)(2) directly affects the taxpayer's burden: A security holder will experience an increase in future tax dollars owed if it is required to reduce current NOL by exempt income. If, for example, a taxpayer's 1979 NOL of $100 is reduced by $100 of exempt income, the taxpayer cannot deduct the $100 in 1980 and, assuming a tax rate of fifty percent, the taxpayer will owe $50 more in taxes. Thus, application of A.R.S. § 43–123.21(E)(2) places a greater tax burden on the security holder by reason of the receipt of exempt income and is in violation of the Arizona Constitution.

The Department defends the constitutionality of A.R.S. § 43–123.21 on the ground that it provides, in effect, only for a carryover of true economic net operating losses and argues that a net operating loss arrived at by excluding tax-exempt income is not a true economic loss. We reject this, however, because we are not called upon to analyze tax-exempt income in financial or economic theory. Our duty is to decide whether, as earlier stated, the tax burden of a holder of tax-exempt securities is increased because the holder is the recipient of interest from tax-free securities. The answer is clear that the burden is increased.

For the reasons stated, we hold that A.R.S. § 43–123.21(E)(2) is unconstitutional. We also hold that the provision is severable from other provisions of the statute. *Selective Life Insurance Co. v. Equitable Life Assurance Society of U.S.*, 101 Ariz. 594, 422 P.2d 710 (1967); A.R.S. § 43–199(b).

In conclusion, the judgment of the trial court is affirmed. Since we have found the trial court's interpretation of A.R.S. § 43–126(a)(5) to be correct, it is unnecessary to decide the constitutionality of A.R.S. § 43–126(a)(5); therefore, paragraphs 4(b) and (d) of the judgment dealing with that issue are vacated.

CONTRERAS, P. J., and YALE McFATE, Judge (Retired), concur.

NOTE: The Honorable YALE McFATE was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 20.