IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

DENISE THOMAS GARLAN, *Petitioner/Appellee/Cross-Appellant*,

*v.*

MICHAEL J. GARLAN, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 19-0245 FC

FILED 6-18-2020

Appeal from the Superior Court in Coconino County
No. S0300DO20020510
The Honorable Ted Stuart Reed, Judge
The Honorable Mark R. Moran, Judge (retired)

**AFFIRMED**

COUNSEL

Davis Miles McGuire Gardner, PLLC, Tempe
By Douglas C. Gardner
*Counsel for Respondent/Appellant/Cross-Appellee*

Linda Wallace, PLLC, Sedona
By Linda Wallace
*Counsel for Petitioner/Appellee/Cross-Appellant*

_____

**OPINION**

Presiding Judge Paul J. McMurdie delivered the opinion of the Court, in which Judge Jennifer B. Campbell and Vice Chief Judge Kent E. Cattani joined.

_____

**M c M U R D I E**, Judge:

**¶1**        Michael J. Garlan ("Husband") appeals from the superior court's judgment modifying spousal maintenance to Denise Garlan ("Wife"). We affirm and hold that Arizona Revised Statutes ("A.R.S.") section 25-327(B) authorizes the superior court to order that a spouse's obligation to pay spousal maintenance will not terminate upon the death of the paying spouse if the circumstances justify it, and the order is made expressly in the judgment. We address the parties' other arguments in a contemporaneously filed memorandum decision.[1]

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        The parties were married in 1985, and Wife petitioned for the dissolution of the marriage in 2002. In 2003, the parties executed a marital settlement agreement ("MSA"). As part of spousal maintenance,[2] the MSA provided that Husband would keep Wife on her current medical and dental insurance coverage for her life to be "paid directly from Husband's monthly income or from his estate in the event of his death." The superior court dissolved the marriage and incorporated the terms of the MSA into the decree.

**¶3**        In 2015, Husband petitioned to terminate or modify the medical-insurance spousal maintenance. After an evidentiary hearing, the superior court ordered Husband to pay for medical-insurance coverage

_____

[1]        The parties raise other issues that do not meet the criteria for publication. *See* Ariz. R. Sup. Ct. 111(b); ARCAP 28(b); *Bobrow v. Bobrow*, 241 Ariz. 592, 594, ¶ 2, n.3 (App. 2017).

[2]        The MSA uses the term spousal "support," which we refer to as "maintenance" throughout this opinion to remain consistent with the statutory language.

secured by Wife "up to an annual premium of $25,000, including payment of [a] deductible," to expire when Wife is eligible for Medicare coverage at 65. The court also ordered the insurance payments to be paid from Husband's estate in the event of his death. Husband appealed the ruling, and we have jurisdiction under A.R.S. § 12-2101(A)(2).

## DISCUSSION

¶4        Husband challenges the superior court's ruling modifying medical-insurance spousal maintenance as agreed by the parties in the MSA. Because the MSA did not provide that the parties' agreement regarding spousal maintenance was non-modifiable, the superior court was authorized to modify the spousal maintenance provided for in the MSA. A.R.S. § 25-317(F)–(G). We review the superior court's ruling modifying spousal maintenance for an abuse of discretion. *McClendon v. McClendon*, 243 Ariz. 399, 401, ¶ 8 (App. 2017). However, we review issues of statutory interpretation *de novo*. *State v. Holle*, 240 Ariz. 300, 302, ¶ 8 (2016). We view the evidence in the light most favorable to upholding a court's maintenance award and will affirm it if there is any reasonable supporting evidence. *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984).

¶5        At the outset, we reject Husband's argument that the MSA's provision requiring him to provide medical coverage was not a spousal-maintenance requirement but only a contractual requirement. In his petition, Husband explicitly asked the superior court to terminate or modify his medical-insurance spousal maintenance obligation under the MSA and acknowledged a previous court ruling that the MSA provision regarding medical-insurance coverage was a spousal-maintenance obligation. We conclude that Husband's filing of the petition and substantive assertions to be a binding admission that the medical-coverage agreement was a spousal-maintenance obligation. *KCI Rest. Mgmt. LLC v. Holm Wright Hyde & Hays PLC*, 236 Ariz. 485, 488, ¶ 12 (App. 2014) (admissions in a pleading can bind a party).

## A.    The Superior Court Had the Statutory Authority to Order That Spousal Maintenance Continue Beyond Husband's Death.

¶6        As stated above, the court ordered Husband to provide Wife with medical coverage with an annual premium of up to $25,000 per year, including payment of a deductible, until she reached the age of 65 and that the payments would continue from his estate in the event of his death. Citing A.R.S. § 25-327(B), Husband argues the court had no authority to

order spousal-maintenance payments to continue past his death. We disagree.

¶7          Section 25-327(B) provides:

> Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated on the death of either party or the remarriage of the party receiving maintenance.

Whether the phrase "expressly provided in the decree" authorizes the superior court to continue the "obligation to pay future maintenance" beyond the death of the obligor appears to be a matter of first impression. Although courts have addressed A.R.S. § 25-327(B) in several opinions, those decisions focused only on the language needed for an obligation to pay spousal maintenance in a separation agreement or decree to survive the death of the paying spouse. *See, e.g.*, *In re Estelle's Estate*, 122 Ariz. 109, 113 (1979) (the dismissal of the petition for modification of spousal maintenance filed after obligor's death was correct because the decree did not expressly provide for spousal maintenance to be paid after the paying spouse's death); *Diefenbach v. Holmberg*, 200 Ariz. 415, 416-17, ¶¶ 4-5 (App. 2001) (language that spousal-maintenance requirement is "non-modifiable" insufficient to mandate payments after the death of receiving spouse).

¶8          Husband notes that there are cases in which the courts appear to presume a court can only order spousal maintenance "until death or remarriage." *See, e.g.*, *Rainwater v. Rainwater*, 177 Ariz. 500, 503–05 (App. 1993) (addressing an indefinite award of spousal maintenance as an order made "until death or remarriage"). But those cases do not address A.R.S. § 25-327(B) or a specific agreement or order to continue support beyond death.

¶9          Here, the court "expressly provided" that Husband's obligation to pay spousal maintenance continued beyond his death. Echoing the language used in the MSA, the court ordered that: "Monthly payments shall be paid directly from [Husband's] monthly income *or from his estate in the event of his death*." (Emphasis added.) This statement satisfies the requirement for "express" language "relating to termination, to the effect that the spousal maintenance obligation will not cease upon death." *Palmer v. Palmer*, 217 Ariz. 67, 72, ¶ 19 (App. 2007) (emphasis omitted). What we must consider instead is whether the language of A.R.S. § 25-327(B) provided the superior court the authority to order that Husband's obligation to pay future maintenance would not terminate upon his death.

¶10 When interpreting a statute, this court's objective is to "effectuate the legislature's intent," and the "best indicator of that intent is the statute's plain language." *SolarCity Corp. v. Ariz. Dep't of Revenue*, 243 Ariz. 477, 480, ¶ 8 (2018). "When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernible from the face of the statute." *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 325, ¶ 8 (2011) (quoting *State v. Christian*, 205 Ariz. 64, 66, ¶ 6 (2003)). "Statutory terms, however, must be considered in context." *Id.* We must also construe words and phrases "according to the common and approved use of the language." A.R.S. § 1-213. "Statutes should be interpreted, whenever possible, so that no clause, sentence, or word is rendered superfluous, void, contradictory, or insignificant." *Cont'l Bank v. Ariz. Dep't of Revenue*, 131 Ariz. 6, 8 (App. 1981).

¶11 Applying these principles to the language of A.R.S. § 25-327(B), we conclude it recognizes a court-held power to order that an obligation to pay future spousal maintenance continue beyond the obligor's death. Section 25-327(B) provides that the "obligation to pay future maintenance" terminates "on the death of either party," unless it is otherwise (1) "agreed in writing" *or* (2) "expressly provided in the decree." Because the phrases are separated by the word "or" and because we must avoid rendering either superfluous, each phrase must be interpreted to describe a separate action. *See Cont'l Bank*, 131 Ariz. at 8. In context, the phrase "agreed in writing" refers to the power of the parties to "enter into a written separation agreement containing provisions for . . . maintenance of either of them." A.R.S. § 25-317(A). Section 25-327(B), therefore, allows the parties to provide in a separation agreement that the paying spouse's maintenance obligations will continue beyond death.

¶12 The phrase "expressly provided in the decree," on the other hand, refers to the powers of the court. A decree of dissolution is a judgment or an "*act of a court* which fixes clearly the rights and liabilities of the respective parties to litigation and determines the controversy at hand." *In re Marriage of Zale*, 193 Ariz. 246, 249, ¶ 10 (1999) (emphasis added) (quoting *Wolf Corp. v. Louis*, 11 Ariz. App. 352, 355 (1970)). Moreover, "decrees of dissolution generally remain subject to the court's continuing jurisdiction to modify maintenance and support provisions." *In re Marriage of Waldren*, 217 Ariz. 173, 175, ¶ 8 (2007). By including the phrase "expressly provided in the *decree*," A.R.S. § 25-327(B) empowers the court, in the exercise of its authority to issue and modify a decree, to order that the obligation to pay future maintenance continue beyond the paying spouse's death. (Emphasis added.)

¶13      Our interpretation is strengthened by the commentary to Uniform Marriage and Divorce Act § 316(b), which the legislature adopted wholesale when it enacted A.R.S. § 25-327(B) in 1973. *Williams v. Williams*, 166 Ariz. 260, 262 (App. 1990). "[W]hen a statute is based on a uniform act, we assume that the legislature 'intended to adopt the construction placed on the act by its drafters.'" *UNUM Life Ins. Co. of Am. v. Craig*, 200 Ariz. 327, 332, ¶ 25 (2001) (quoting *State v. Sanchez*, 174 Ariz. 44, 47 (App. 1993)). "Commentary to such a uniform act is highly persuasive unless erroneous or contrary to the settled policy of Arizona." *Id.* The relevant comment states:

> Subsection (b) authorizes the parties to agree in writing or *the court to provide* in the [decree] that maintenance will continue beyond the death of the obligor . . . . In the absence[] of such an agreement or provision in the decree, this section sets the termination date for the obligation to pay future maintenance.

Unif. Marriage and Divorce Act § 316 cmt. (amended 1973) (emphasis added). The comment makes clear that the provision permits either the parties or the court to provide that a spousal-maintenance obligation will continue beyond the death of the paying spouse.

¶14      Accordingly, we conclude the court had the authority under A.R.S. § 25-327(B) to order that Husband provide Wife with medical coverage up to $25,000 per year until she reaches age 65, and the obligation would not terminate upon his death.

**B.      The Superior Court Did Not Abuse Its Discretion by Modifying the Spousal Maintenance.**

¶15      Husband next argues that the superior court abused its discretion by modifying the spousal-maintenance provision concerning Wife's medical coverage.

¶16      In considering factors relevant to the duration and amount of spousal maintenance in A.R.S. § 25-319(B), the superior court found that Wife's annual gross income as a realtor is $14,000 and that her expenses are $2,765 per month. The court found that Wife could earn more as a realtor, but in so doing, she would be deprived of the health insurance provided by the Arizona Health Care Cost Containment System. The court found that Wife had a severe medical condition that requires infusion medication at $86,000 per year. The court found that Wife had researched and found private medical insurance that would cover her medical expenses at an annual insurance premium of $22,400, including payment of a $2,000

deductible and that Wife could not afford this private insurance even if working at her full capacity. The court also considered Husband's income and expenses and found that Husband had greater resources than Wife.

¶17        Given the circumstances surrounding Wife's health, her age at the time of the ruling, the disparity of financial resources between the parties, and the length of the marriage, we conclude the court's modification regarding the spousal-maintenance amount and duration was not an abuse of discretion. *See Thomas*, 142 Ariz. at 390.

## ATTORNEY'S FEES AND COSTS

¶18        Both parties request attorney's fees and costs on appeal under A.R.S. § 25-324. Given the disparity of financial resources between the parties, we award Wife her attorney's fees and costs, subject to her compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

¶19        We affirm the judgment.



AMY M. WOOD • Clerk of the Court
FILED:    AA