IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROGER S., *Appellant,*

*v.*

JAMES S., WHITNEY K., A.S., *Appellees.*

No. 1 CA-JV 20-0273
FILED 6-29-2021

Appeal from the Superior Court in Maricopa County
No. JD37965
The Honorable Lori Bustamante, Judge
The Honorable Randall H. Warner, Judge

**AFFIRMED**

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek, Erica Padish Conrad (argued)
*Counsel for Appellant*

Edward D. Johnson, Peoria
*Counsel for Appellee James S.*

Arizona Attorney General's Office, Tucson
By Dawn R. Williams
*Counsel for Amicus Curiae Department of Child Safety*[1]

---

[1]    We thank the Department of Child Safety for its thoughtful amicus brief in this matter.

---

**OPINION**

Presiding Judge Paul J. McMurdie delivered the Court's opinion, in which Judge Cynthia J. Bailey and Judge Lawrence F. Winthrop joined.

---

**M c M U R D I E**, Judge:

¶1          Roger S. ("Roger") appeals the court's judgment in favor of James S. ("James") regarding the paternity of a child, Olivia.[2] We conclude the superior court did not err by allowing James to challenge paternity based on fraud, duress, or mistake under A.R.S. § 25-812(E) and Arizona Rule of Family Law Procedure 85 when he asserted his paternity in a request to the court within six months of Mother and Roger's acknowledgment of paternity. In addition, James presented sufficient evidence for the court to conclude the acknowledgment was made under a material mistake of fact. We, therefore, affirm the court's order setting aside the paternity judgment in favor of Roger and entering a paternity judgment in favor of James.

**FACTS AND PROCEDURAL BACKGROUND**

¶2          Olivia was born on July 22, 2019. Mother engaged in sexual intercourse with both Roger and James around the time of Olivia's conception. On July 29, 2019, Olivia's birth certificate was registered with the Bureau of Vital Records with Roger listed as the father. About a month after Olivia's birth, Mother contacted James. He was aware of Mother's pregnancy but not the birth. Mother invited James to her home to see Olivia. After seeing Olivia, James bought and administered a home DNA paternity test. A short time later, James received results indicating he is Olivia's biological father.

¶3          On September 13, 2019, the Department of Child Safety ("DCS") took temporary custody of Olivia because of suspected neglect and petitioned for a dependency concerning both Mother and Roger. DCS alleged that Roger had established his paternity by acknowledgment of

---

[2]          We refer to the child by a pseudonym to protect her identity.

paternity. At the initial dependency hearing, the court noted that Roger's paternity had been established.

¶4 Mother did not contest the dependency, and the court found Olivia dependent as to Mother. Roger challenged the dependency, and the court scheduled an adjudication to decide the matter.

¶5 Once James received the home paternity test results, he filed a request to intervene in Olivia's dependency case, attaching a copy of the test results. Based on James's paternity claim, the court ordered DCS to provide James with a DNA paternity test. Although he was not yet a party to the case, James began to attend the dependency proceedings.

¶6 During Roger's contested dependency adjudication, the court informed the parties that the court-ordered DNA paternity test proved that James was Olivia's father. DCS orally moved to amend the petition to allege James as Olivia's father, but Roger objected to the motion. As a result, the court allowed DCS to file a written motion and Roger to object to James's paternity claim.

¶7 DCS then moved to amend the dependency petition to allege James was the biological father of Olivia. DCS further alleged that Olivia was dependent as to James because of neglect. The court granted DCS's motion, and James entered a no-contest plea regarding the allegations in the dependency petition. The court found Oliva dependent as to both Roger and James. The court then scheduled an evidentiary hearing to address the competing paternity claims.

¶8 At that hearing, neither James nor Roger called witnesses. James presented no documentary evidence, and Roger offered only Olivia's birth certificate as evidence. The court stated that Roger's paternity had already been established by his acknowledgment of paternity, which had the force and effect of a judgment under the law. The court then concluded James had failed to carry his burden to prove the existence of circumstances that justified setting aside the acknowledgment judgment and affirmed Roger's paternity.

¶9 James moved to reconsider, arguing he had received ineffective assistance of counsel at the hearing. Though he had not presented evidence at the hearing, there was evidence in the record that the acknowledgment had been made under either fraud or mistake of fact. The court found that James had been prejudiced by his lawyer's conduct and granted the motion in part, allowing James to file a new motion challenging

paternity. After receiving briefing on the issue, the court scheduled another evidentiary hearing.

¶10        At the second hearing, James offered the results from the court-ordered DNA paternity test. In addition, James testified that Roger was aware that James and Mother were engaging in sexual intercourse around the time Olivia was conceived. He further testified that Mother told him she did not intend to allow Roger to put his name on the birth certificate until she knew who the father was.

¶11        The court found that James had met his burden to demonstrate that the acknowledgment had been made under a material mistake of fact under A.R.S. § 25-812(E). Accordingly, the court set aside Roger's paternity judgment and deemed James the legal parent of Oliva based on the genetic testing proving parentage. *See* A.R.S. § 25-401(4).

¶12        Olivia remains a ward of the court in the legal care, custody, and control of DCS but has been in the physical custody of James since November 2020. Roger appealed from the paternity judgment, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1), -2101(A)(1), (2), and 8-235(A).

## DISCUSSION

A.    **After 60 Days, a Voluntary Acknowledgment of Paternity Can *Only* Be Challenged Based on Fraud, Duress, or Material Mistake of Fact.**

¶13        James and Roger dispute whether the restrictions imposed by A.R.S. § 25-812(E) apply to a paternity challenge by a putative third-party father. We review questions of statutory interpretation *de novo*. *Garlan v. Garlan*, 249 Ariz. 278, 280, ¶ 4 (App. 2020). When an appeal presents a mixed question of law and fact, we defer to the superior court's factual findings but review *de novo* "all legal conclusions." *Helvetica Servicing, Inc. v. Pasquan*, 249 Ariz. 349, 352, ¶ 10 (2020).

¶14        A.R.S. § 25-812 provides a procedure for establishing paternity by voluntary acknowledgment. Our legislature adopted the current system in response to the Personal Responsibility and Work Opportunity Reconciliation Act of 1996,[3] which conditioned certain federal

---

[3]    Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105 (codified as amended in scattered sections of titles 7, 8, 21, 25, and 42 of the United States Code).

funding on a state's adoption of laws and procedures for establishing paternity and enforcing child support obligations. 42 U.S.C. § 666(a)(5)(C); 1997 Ariz. Sess. Laws ch. 219, § 39.

¶15          Subsection 666(a)(5)(D)(ii) and (iii) of Title 42 of the United States Code sets forth statutorily prescribed procedures the states are required to enact if they wish to be eligible for such funding, including

> (ii) Legal finding of paternity
>
> Procedures under which a signed voluntary acknowledgment of paternity is considered a legal finding of paternity, subject to the right of any signatory to rescind the acknowledgment within the earlier of--
>
>> (I) 60 days; or
>>
>> (II) the date of an administrative or judicial proceeding relating to the child (including a proceeding to establish a support order) in which the signatory is a party.
>
> (iii) Contest
>
> Procedures under which, after the 60-day period referred to in clause (ii), a signed voluntary acknowledgment of paternity may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof upon the challenger, and under which the legal responsibilities (including child support obligations) of any signatory arising from the acknowledgment may not be suspended during the challenge, except for good cause shown.

In addition, to qualify for funding, states are required to create procedures ensuring that putative fathers have a reasonable opportunity to initiate a paternity action. 42 U.S.C. § 666(a)(5)(L).

¶16          Under A.R.S. § 25-812(D), a voluntary acknowledgment of paternity has the same force and effect as a superior court judgment. *Gutierrez v. Fox,* 242 Ariz. 259, 268, ¶ 38 (App. 2017). An acknowledging parent may rescind the acknowledgment within the *earlier* of sixty days after the last signature on the filed acknowledgment or the date of a court proceeding concerning the child. A.R.S. § 25-812(H). After sixty days,

paternity can *only* be challenged by moving for relief from the judgment under Rule 85 based on fraud, duress, or material mistake of fact. A.R.S. § 25-812(E). Such a motion must be made within six months after the entry of the judgment or order or date of the proceeding, whichever is later. Ariz. R. Fam. Law P. 85(c)(1); *Andrew R. v. ADES*, 223 Ariz. 453, 459–60, ¶¶ 23–24 (App. 2010). The six months begins to run when the acknowledgment is filed with the clerk of the superior court, the Department of Economic Security, or the Department of Health Services. *McQuillen*, 249 Ariz. at 73, ¶ 12.; A.R.S. § 25-812(A).

¶17　　　　James urges us to follow *Brummond v. Lucio*, 243 Ariz. 360, 361, ¶¶ 14–21 (App. 2017), and hold that the restrictions imposed by 25-812(E) do not apply to a challenge by a putative third-party father. But A.R.S. § 25-812(E) provides:

> Pursuant to rule 85(c) of the Arizona rules of family law procedure, the mother, father or child, or a party to the proceeding on a rule 85(c) motion, may challenge a voluntary acknowledgment of paternity established in this state at any time after the sixty day period *only* on the basis of fraud, duress or material mistake of fact[.]

(emphasis added). Read in conjunction with the federal requirement that a state must allow an acknowledgment to "be challenged in court only on the basis of fraud, duress, or material mistake of fact," § 25-812(E) does not allow a putative third-party father to challenge paternity by means other than a Rule 85 motion alleging fraud, duress, or mistake of fact as prescribed by A.R.S. § 25-812(E). Therefore, the court could set aside the acknowledgment judgment *only* if James made a timely challenge, meaning within the six months of the entry of the judgment or order. To that extent, we disagree with *Brummond.*

## B.　James Timely Challenged Paternity under A.R.S. § 25-812(E).

¶18　　　　Roger argues the superior court erred by finding in favor of James because James did not timely challenge paternity by motion according to Rule 85 as required by A.R.S. § 25-812(E).

**¶19** The acknowledgment of paternity was filed around July 29, 2019.[4] On December 2, 2019, about four months later, James filed a handwritten, *pro se*, "Request to the Court," claiming he was the child's father and asking to intervene in Olivia's dependency. The request stated:

> Order to [intervene] for [custody] of my daughter [Olivia.] I did paternity test and she is my daughter that is currently in foster care [due] to [circumstances] of her mother[.] [M]e and [Olivia's] mother have minimal contact with each other so I am not 100 percent why she is in [custody] of [DCS.] [W]as told neglect. Attached are a set of paternity test.

It was not until June 22, 2020—more than ten months after the acknowledgment had been filed—that James filed a formal motion explicitly alleging the acknowledgment had been made under fraud or material mistake of fact.

**¶20** Roger argues James's earlier *pro se* filing failed to satisfy A.R.S. § 25-812(E) because it did not allege fraud, material mistake of fact, or duress. However, we decline to place form over substance in this context. *Cf.* Ariz. R. Fam. Law P. 24(d) ("Pleadings must be construed so as to do substantial justice.").

**¶21** Neither A.R.S. § 25-812(E) nor Rule 85 requires a challenger's motion to contain specific allegations of fraud, duress, or mistake of fact. Rule 85(b) flexibly provides that a court may grant relief from a judgment "[o]n motion and on such terms as are just." Thus, the only material requirement is that a motion put the acknowledging parents on notice that the putative father contends parentage. Here, James put Roger and Mother on notice by supporting his *pro se* filing with his self-administered DNA test results. Implicit in his notice was a contention that, at a minimum, Roger and Mother's acknowledgment of paternity was based on a mistake of fact.

---

[4] A copy of Olivia's birth certificate filed with the court states that it was registered with the Arizona Department of Health Services Bureau of Vital Records on July 29, 2019. When a child's parents are not married at the time of birth or at any time within ten months before the birth, an acknowledgement of paternity or an administrative or court order must be submitted to the Department of Health Services before the Department will issue a birth certificate listing the child's father's name. A.R.S. § 36-334; Ariz. Admin. Code R9-19-201(A)(1)(c).

¶22        It was within the court's discretion to construe James's filing as a timely challenge under A.R.S. § 25-812(E) and to hold an evidentiary hearing to determine whether evidence existed of fraud, duress, or mistake of fact.

**C.        The Court's Finding of Mistake of Fact Was Supported by Sufficient Evidence.**

¶23        Roger also argues the court's finding of mistake of fact was not supported by sufficient evidence.

¶24        After the evidentiary hearing, the court found:

> [James] testified that [Roger] was well aware that [James] and Mother were engaging in sexual intercourse at the time of conception of the child. [James] also testified that Mother indicated she would not have [Roger] sign the acknowledgment of paternity until a paternity test was completed to verify the identity of the Father. Despite the uncontroverted testimony that both Mother and [Roger] knew that [James] could be the Father of [Olivia], [Roger] and Mother signed the acknowledgment of paternity. It was not reasonable for [Roger] to sign the acknowledgment of paternity knowing that the possibility existed that he was not the Father. Mother also knew or should have known [James] could be the Father of the child at the time she signed the acknowledgment. Although the evidence presented may not rise to the level of fraud, the testimony presented is sufficient to demonstrate there was a material mistake of fact. [James] has met his burden of demonstrating there was a material mistake of fact.

¶25        Roger argues there was no material mistake of fact because he and Mother were both aware that he might not be Olivia's biological father when they signed the acknowledgment. But we conclude, as the superior

court did, that the evidence before the court showed a material mistake of fact.[5]

**¶26**     The acknowledgment form asks for the father's name and requires the parents to swear or affirm that the application is true and correct under the penalty of perjury.[6] Mother and Roger were aware that either Roger or James could be Olivia's father but chose to sign the acknowledgment, thereby swearing or affirming that Roger was the father. As was ultimately proven by the DNA testing, they were mistaken. The fact was material because the knowledge that James was the biological father necessarily would have affected their decision to sign an acknowledgment claiming paternity under the penalty of perjury. *See Material*, Black's Law Dictionary (11th ed. 2019) (defining "material" as "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential").

## D.     James Did Not Waive His Right to Claim Paternity by Failing to Register as a Putative Father.

**¶27**     Citing A.R.S. § 8-106.01(E) and (F), Roger argues James waived his right to claim paternity by failing to file with the Arizona Putative Father Registry within 30 days of the child's birth. James's failure to file with the putative father's registry did not bar his paternity claim. A.R.S. § 8-106.01(E) provides that

> [a] putative father who does not file a notice of a claim of paternity as required under this section waives his right to be

---

[5]     We note that while such a mistake of fact is cause to set aside the judgment at the request of a putative third-party father, the same mistake of fact would not be sufficient grounds to set aside the judgment at the request of a parent who signed the acknowledgment. *See McQuillen*, 249 Ariz. at 74, ¶ 17 ("[A]n innocent party may seek relief from a judgment procured by the fraud of others.").

[6]     We take judicial notice of the acknowledgment of paternity form that became effective in August 2018 and is available on the Arizona Department of Health Services Website. ADES, Acknowledgment of Paternity Form, (August 2018) https://www.azdhs.gov/documents/licen sing/vital-records/register-acknowledgement-paternity.pdf; *Jarvis v. State Land Dep't*, 104 Ariz. 527, 530 (1969), *modified*, 106 Ariz. 506 (1970), *modified,* 113 Ariz. 230 (1976) (taking judicial notice of the records of a state agency).

notified of any judicial hearing regarding the child's adoption and his consent to the adoption is not required, unless he proves, by clear and convincing evidence, both of the following:

1. It was not possible for him to file a notice of a claim of paternity within the period of time specified in subsection B of this section.

2. He filed a notice of a claim of paternity within thirty days after it became possible for him to file.

¶28    While James's failure to file with the registry might have prevented him from challenging adoption proceedings, Roger never attempted to adopt Olivia. Therefore, because this case does not involve adoption proceedings, A.R.S. § 8-106.01(E) is inapposite.

**E.    Roger Waived Any Argument that the Court Erred by Conducting the Evidentiary Hearing in His Absence.**

¶29    Roger also argues the trial court erred by taking evidence on the paternity issue in Roger's absence but cites no authority prohibiting the superior court from holding a hearing in a party's absence when the absent party was adequately notified of the proceeding. Because the argument is not supported by legal authority, we decline to address it further. *State v. Perez*, 233 Ariz. 38, 41, ¶ 10 (App. 2013).

## CONCLUSION

¶30    We affirm the court's judgment of paternity in favor of James.

